[No. 3553-1-III.   Division Three.   December 23, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. KINETH YORK, *Appellant.*

*John G. Burchard, Jr., Public Defender,* for appellant.

*Douglas S. Boole, Prosecuting Attorney,* and *Thomas Benner, Deputy,* for respondent.

MUNSON, J.—Kineth York appeals a conviction and order for deferred sentence on two counts of delivery of a controlled substance. We reverse.

York was convicted primarily upon the testimony of Gary Smith, an undercover investigator for the Okanogan County Sheriff's Department, who testified to buying two bags of marijuana from York on the night of January 15, 1979.

On direct examination, Smith testified as to his background and military service and his work experience after leaving the military. He had held jobs doing undercover work, initially in the military, and then for the Wenatchee Police Department. The defense sought to elicit, on cross–examination, that Smith had been employed by the Mineral County Sheriff's Department in Montana as a trainee, from which position he had been fired because of irregularities in his paper work procedures, and his general unsuitability for the job. However, the State had moved in limine to exclude cross–examination on this issue. The court, in granting the motion in limine, held this was a collateral matter and sustained the State's objection. The defense presented a substantial number of alibi witnesses indicating

Kineth York had not been present at the location where the alleged drug buy occurred. They attempted to show a motive on Smith's part to fabricate the sale. Smith had been unemployed and practically penniless upon arriving in Okanogan County; he was paid by the sheriff's department $20 per successful drug buy. Smith earned $740 during his brief tenure as an undercover drug agent in Okanogan County. The defense sought to introduce testimony regarding his Mineral County, Montana,[1] employment to show that Smith was not above fabricating or otherwise adjusting his testimony regarding drug buys in order to obtain money.

The importance of Smith's testimony cannot be overstated. He was the only witness to have allegedly seen York sell the marijuana. In closing argument the prosecutor said:

> There's no reason at all to doubt the testimony of Gary Smith. Absolutely no reason at all. He has no axe to grind. He has no stake in the outcome. He's not working here anymore. His time here is through. He's done a good job, just like he's done in the past in his prior jobs.

Two issues are presented by this appeal. The first is whether evidence of Smith's job difficulties in Montana was merely collateral to the questions presented in this case. The second is, assuming it was not collateral, whether the judge was correct in limiting cross-examination on that issue.

Smith was the only witness to the sale. His credibility, based on his apparent unsullied background and the total lack of meaningful impeachment, was stressed heavily by the prosecution. In short, his credibility was crucial to the State and to the defense; it was simply a contest between the word of Gary Smith and Kineth York's alibi witnesses. The prosecution's ability to argue there was nothing negative in Smith's background may have been the single factor

---

[1]The defendant brought the Montana sheriff, who hired and fired Smith, to court and had him testify, as an offer of proof, to the reasons for Smith's dismissal. What weight a jury might have given to the testimony of the sheriff (now a judge) cannot be determined on this review.

which caused the jury to believe him rather than the other witnesses. Credibility was not, therefore, collateral; it was the very essence of the defense.

Evidence rule 608(b) states:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross–examination of the witness (1) concerning his character for truthfulness or untruthfulness, . . .

The trial court, in its exercise of discretion, appears to have found the proffered testimony not to have been probative of truthfulness or untruthfulness. We must therefore question whether the trial court abused its discretion.

■ Normally, matters of trial court discretion are reviewed by a standard which requires this court to find that no reasonable man would have taken the action pursued by the trial court. *See, e.g., State v. Huelett,* 92 Wn.2d 967, 969, 603 P.2d 1258 (1979). But in a criminal case, to allow the defendant no cross–examination into an important area is an abuse of discretion. *State v. Fluhart,* 123 Wash. 175, 212 P. 245 (1923). It is well established that a criminal defendant is given extra latitude in cross–examination to show motive or credibility, especially when the particular prosecution witness is essential to the State's case. *State v. Peterson,* 2 Wn. App. 464, 469 P.2d 980 (1970); *State v. Tate,* 2 Wn. App. 241, 469 P.2d 999 (1970). Any fact which goes to the trustworthiness of the witness may be elicited if it is germane to the issue. *State v. Robideau,* 70 Wn.2d 994, 998, 425 P.2d 880 (1967). *See also Simonson v. Huff,* 124 Wash. 549, 553, 215 P. 49 (1923).

A criminal defendant's right to cross–examine witnesses against him is a fundamental constitutional right. *See Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93

S. Ct. 1038 (1973). This right is not absolute and may in appropriate cases bow to other legitimate interests in the criminal process; but denial or diminution calls into question the integrity of the fact–finding process and requires the competing interests be closely examined. *Berger v. California,* 393 U.S. 314, 315, 21 L. Ed. 2d 508, 89 S. Ct. 540, 541 (1969).

Here, the State introduced Smith's background as a military policeman investigating drug usage, the fact he had held numerous jobs as a laborer and his previous work for the Wenatchee Police Department as an undercover agent. But the State sought pretrial suppression of his employment as a Montana deputy sheriff trainee, engaged in the same type of undercover work, and his subsequent dismissal. Although the State tried to minimize the relevance of this fact, it was of sufficient importance to obtain pretrial suppression. *State v. Jones,* 26 Wn. App. 1, 8–9, 612 P.2d 404 (1980), quoting from *State v. Gefeller,* 76 Wn.2d 449, 455, 458 P.2d 17 (1969), is apropos: "It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it." *State v. Gefeller, supra* at 455.

■ We conclude, as a matter of fundamental fairness, the defense should have been allowed to bring out the only negative characteristics of the one most important witness against York. If the elicited testimony had no substantial bearing upon the witness' credibility, we would not be offended by the trial court's action. However, we find this area of impeachment to be of considerable importance to the defense and cannot in good conscience condone the trial court's action. We are unable to state, beyond a reasonable doubt, that error was not prejudicial. *State v. Davis,* 27 Wn. App. 498, 506, 618 P.2d 1034 (1980).

The conviction is reversed and the case remanded for a new trial.

MCINTURFF, A.C.J., and ROE, J., concur.

Reconsideration denied January 16, 1981.