# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 67827-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| DATHAN JUDE McCRARY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 18, 2013 |
| | ) | |

LAU, J. — Dathan McCrary appeals his convictions for second degree taking a motor vehicle without permission, first degree unlawful possession of a firearm, and fourth degree assault. He contends that the trial court violated his federal and state constitutional right to confront witnesses when it precluded cross-examination of a King County sheriff's office detective about a 1999 internal investigation disciplinary incident under ER 608(b). Because the trial court properly exercised its broad discretion to exclude this evidence and because McCrary's statement of additional grounds (SAG) fails, we affirm.

## FACTS

In December 2008, Dathan McCrary spent the night at Tanya Mapp-Bynum's apartment. Before going to sleep, McCrary put some belongings, including a gun box,

in Mapp-Bynum's dresser. The next morning, during an argument, McCrary twice grabbed Mapp-Bynum by the throat. Mapp-Bynum then drove McCrary to the liquor store where she worked. Mapp-Bynum told McCrary he could sit in her car and listen to the radio until his friends picked him up. McCrary drove away in Mapp-Bynum's car. Twenty minutes later, Mapp-Bynum called 911 to report that McCrary had stolen her car and choked her.

The Des Moines police department and the King County sheriff's office (KCSO) responded to the 911 call. Working with the officers, Mapp-Bynum called McCrary to meet her at a park and ride. That evening, McCrary arrived at the park and ride in an SUV (sport utility vehicle) owned and driven by his friend, Terry Meyers. Officers quickly identified and arrested McCrary.

While officers secured McCrary, KCSO Detective Keith Martin parked his unmarked police van directly behind Meyers' SUV. Police radio alerted him about two occupants in the SUV. He drew his gun and yelled at the occupants to show their hands. After receiving no response, he opened the rear driver's side door and saw a handgun partially hidden on the floor under the rear seats. Detective Martin arranged to impound the SUV pending issuance of a search warrant.

Later that evening, officers recovered a gun box from Mapp-Bynum's apartment. The serial number on the gun box matched the serial number on the handgun found in Meyers' SUV. No usable fingerprints were found on the gun or the gun box, but McCrary's fingerprints matched those found on a report of sale inside the gun box.

McCrary made several calls to his fiancé's telephone number from the King County Correctional Facility. During one call, the jail recorded McCrary stating to an

-2-

unknown female, "they found my thing, man." Verbatim Report of Proceedings (VRP) (Aug. 1, 2011) at 853.

The State charged McCrary by amended information with second degree assault, second degree taking a motor vehicle without permission, and first degree unlawful possession of a firearm. At a pretrial hearing, the State moved to preclude McCrary from impeaching Detective Martin's credibility with evidence of two KCSO internal investigation incidents from 1999 and 2000.[1]

The 1999 incident involved a report Martin made to his employer, the KCSO, that his apartment had been burglarized and his Jeep had been stolen. At the time of this report, Martin knew his ex-girlfriend had been driving the Jeep with his consent. Although he later corrected his report, he received a one-day suspension without pay based on a sustained allegation involving "conduct . . . unbecoming . . . [resulting in] diminished confidence in the operation of the department, and adversely affect[ing] or impair[ing] the efficiency of the department member in that on March 12, 1999, he admitted facts when reporting the theft of personal property during a burglary of his residence." VRP (July 21, 2011) at 23. When court ordered to disclose in a defense interview details about the 1999 internal investigation, Martin claimed lack of memory about the incident.

---

[1] This opinion addresses the 1999 incident only. McCrary does not challenge the exclusion of the 2000 incident because he acknowledges it is irrelevant (he received a reprimand for violating KCSO courtesy standards). Pretrial, the trial court admitted two KCSO Internal Investigations Unit files containing evidence of the 1999 and 2000 incidents. These pretrial exhibits are not part of our record.

The trial court granted the State's motion, precluding McCrary from asking Martin any questions about the 1999 or 2000 disciplinary incidents.[2] The court also denied McCrary's CrR 3.6 motion to suppress the handgun found in Meyers' SUV. Following a nine day trial, a jury found McCrary guilty of second degree taking a motor vehicle without permission, first degree unlawful possession of a firearm, and the lesser degree charge of fourth degree assault. McCrary appeals.

## ANALYSIS

McCrary contends that the trial court abused its discretion in precluding cross-examination on Detective Martin's 1999 disciplinary incident. The State responds that the trial court properly exercised its discretion to preclude this impeachment evidence under ER 608(b).

The right to cross-examine an adverse witness is guaranteed by both the federal and state constitutions. But the right is not absolute:

> Courts may, within their sound discretion, deny cross-examination if the evidence sought is vague, argumentative, or speculative. Since cross-examination is at the heart of the confrontation clause, it follows that the confrontation right is also not absolute. The confrontation right and associated cross-examination are limited by general considerations of relevance.

State v. Darden, 145 Wn.2d 612, 620-21, 41 P.3d 1189 (2002) (citation omitted). To determine whether the trial court violated McCrary's constitutional rights, we apply basic rules of evidence. Darden, 145 Wn.2d at 624.

Under ER 607, "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Under ER 608(b), a party may introduce

---

[2] McCrary renewed his opposition at trial, but the court declined to reconsider its earlier ruling.

"[s]pecific instances of the conduct of a witness," other than conviction of a crime, and only "for the purpose of attacking or supporting the witness' credibility . . . ." The conduct may not be proved by extrinsic evidence. ER 608(b). The proponent may, however, cross-examine the witness about the conduct if the inquiry is probative of the witness's character for truthfulness or untruthfulness, and the court exercises its discretion to allow the questioning. ER 608(b). Because we review a trial court's ruling on a motion in limine for abuse of discretion, we will reverse "only if no reasonable person would have decided the matter as the trial court did." State v. O'Connor, 155 Wn.2d 335, 351, 119 P.3d 806 (2005); see also Darden, 145 Wn.2d at 619 ("Abuse exists when the trial court's exercise of discretion is 'manifestly unreasonable or based upon untenable grounds or reasons.'") (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

It is well-established in Washington that "not every instance of a witness's (even a key witness's) misconduct is probative of a witness's truthfulness or untruthfulness under ER 608(b)." O'Connor, 155 Wn.2d at 350. "Specific instances of lying may be admitted whether sworn or unsworn, but their admission is highly discretionary under ER 608(b)." State v. Kunze, 97 Wn. App. 832, 859, 988 P.2d 977 (1999) (emphasis added). "In exercising its discretion, the trial court may consider whether the instance of misconduct is relevant to the witness's veracity on the stand and whether it is germane or relevant to the issues presented at trial." O'Connor, 155 Wn.2d at 349. "The need for cross-examination on misconduct diminishes with the significance of the witness in the state's case." State v. Clark, 143 Wn.2d 731, 766, 24 P.3d 1006 (2001). "[T]he more essential the witness is to the prosecution's case, the more latitude the defense

should be given to explore fundamental elements such as motive, bias, credibility, or foundational matters." Darden, 145 Wn.2d at 619. The materiality of the misconduct may also diminish with the passage of time. State v. Wilson, 60 Wn. App. 887, 893, 808 P.2d 754 (1991) (instances of misconduct "must be probative of truthfulness and not remote in time"). Even if cross-examination is allowed under ER 608, the trial court retains discretion under ER 403 to limit cross-examination premised on waste of time or undue prejudice.

McCrary sought to cross-examine Martin regarding his 1999 suspension, to undermine his credibility. Defense counsel deposed Martin, who denied any memory of the 1999 incident. Because ER 608(b) flatly prohibits admission of extrinsic evidence to prove prior conduct relevant to the witness's untruthfulness, the trial court acted well within its discretion to exclude cross-examination on Martin's 1999 internal investigation discipline. As the trial court noted pretrial, under ER 608(b), the inquiry ends and no extrinsic evidence is permitted given Martin's anticipated lack of memory at trial. In addition, the record shows Martin's limited involvement in this case. According to McCrary, "[Martin] discovered the gun inside the car, alerted other officers to its location, and was the main source of information relied on to obtain the search warrant."[3] Appellant's Br. at 21. McCrary never disputed that Martin found the gun in the car or impounded the car pending a warrant. The trial court also denied McCrary's CrR 3.6 motion to suppress evidence of the gun. He challenges this ruling in his SAG, but it lacks merit as discussed below. Martin's credibility, therefore, was not a central

---

[3] McCrary does not contend that Martin's disciplinary history was germane to his charges for assault and taking a motor vehicle without permission.

-6-

issue at trial. Accordingly, his 1999 internal investigation discipline had limited impeachment value and the trial court acted well within its discretion to preclude cross-examination. Clark, 143 Wn.2d at 766; State v. Roberts, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980).

McCrary relies principally on State v. York, 28 Wn. App. 33, 621 P.2d 784 (1980), to argue that the trial court abused its discretion. There, the trial court precluded cross-examination of an undercover drug agent regarding the circumstances under which he was fired from a previous law enforcement job. The agent's credibility was crucial since he was the only witness to testify that the defendant sold him marijuana. In closing, the prosecutor argued, "'There's no reason at all to doubt the testimony of [the agent]. Absolutely no reason at all. . . . He's done a good job, just like he's done in the past in his prior jobs.'" York, 28 Wn. App. at 35. Because the defendant's ability to impeach the agent's credibility was the "very essence" of his defense and because the trial court's ruling allowed the State to claim the agent had an unsullied employment background, our Supreme Court held that the trial court abused its discretion. York, 28 Wn. App. at 36-37.[4] The record demonstrates that Martin's credibility was not the essence of McCrary's defense. York is distinguishable.

As noted above, the admissibility of evidence under ER 608(b) is subject to the overriding protections of ER 403. Wilson, 60 Wn. App. at 893. That rule provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

---

[4] See also Wilson, 60 Wn. App. at 893-94 (witness's credibility was critical because she provided an alibi).

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403. Martin testified that he could not remember the facts underlying his 1999 discipline due to the passage of time. The trial court acted well within its discretion to exclude the 1999 internal investigation discipline on the ground it lacked probative value, given the passage of time and its unfair prejudice potential.

Even if we assume the trial court erred in precluding cross-examination regarding Detective Martin's disciplinary history, the error was harmless. An error under ER 608 is harmless unless, "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." State v. Ferguson, 100 Wn.2d 131, 137, 667 P.2d 68 (1983). The key factual issue to which Martin testified was his discovery of the gun in Meyers' SUV. That testimony was not crucial to the State's case regarding McCrary's possession of the gun. In addition to Martin's testimony, the State also presented evidence that (1) two other KCSO detectives saw the gun in Meyers' SUV after Martin discovered it; (2) McCrary left a gun box at Mapp-Bynum's apartment; (3) police found McCrary's fingerprints on a report of sale located inside the box; (4) the serial number of the gun found in Meyers' SUV matched the serial number on the gun box; (5) during a recorded telephone call from the King County Correctional Facility, McCrary states, "[T]hey found my thing, man" and "[t]hey found it in the car;" and (6) in another recording, McCrary asks a female to retrieve his gun box from "the bitch house," explaining that "if the bitch takes the shit down there, then it'll prove that that's my shit, and I get booked on it." VRP (Aug. 1, 2011) at 853; VRP (Aug. 2, 2011) at 868, 870. Even if the jury had heard evidence regarding Martin's 1999

disciplinary incident and found him less credible as a result, the trial outcome would have been the same.[5]

STATEMENT OF ADDITIONAL GROUNDS (SAG)

McCrary raises two additional issues in his SAG. First, he contends that the trial court engaged in "judicial misconduct" by failing to "recognize and uphold the state & government laws" at the CrR 3.6 hearing. SAG at 2. He argues that Martin's protective sweep of the SUV was illegal since "Martin took it upon [himself] to search the vehicle in question without any order to do so[, and] after I had already been arrested . . . ." SAG at 2. We view this argument as a challenge to the trial court's CrR 3.6 ruling denying suppression of the gun. Because our record contains no written findings of fact and conclusions of law on that ruling, we are unable to review the challenge. McCrary may raise this argument through a properly-supported personal restraint petition. State v. McFarland, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

Second, McCrary contends that the prosecutor committed misconduct by failing to inform defense counsel that the King County Prosecuting Attorney's Office allegedly placed Detective Martin on a list of officers whose past behavior might require disclosure to avoid a Brady[6] violation. SAG at 3-4. Because this claim involves facts outside the trial record, it cannot be reviewed on direct appeal. McFarland, 127 Wn.2d

---

[5] Even under the constitutional harmless error standard, the error, if any, was harmless.

[6] Under Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

at 338. The appropriate means of raising this claim is through a properly-supported personal restraint petition. <u>McFarland</u>, 127 Wn.2d at 338.

<u>CONCLUSION</u>

For the reasons discussed above, we affirm.

WE CONCUR: