# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72669-2-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON CASTILLO ROMERO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 29, 2016 |
| | ) | |

VERELLEN, A.C.J. — Jason Romero appeals his convictions for assault in the second degree, felony harassment, promoting prostitution in the first degree, and assault in the fourth degree, all domestic violence offenses. He contends that the trial court violated his constitutional rights to present a defense and confront the witnesses against him by excluding certain impeachment evidence. Because the trial court did not abuse its discretion by excluding this evidence, we affirm Romero's convictions.

He also asserts, and the State concedes, that the trial court exceeded its sentencing authority in imposing terms of community custody on some convictions. We accept the State's concession and remand for amendment of the community custody terms of Romero's judgment and sentence.

BACKGROUND

In spring 2012, 20-year-old N.G. was living in Yakima County. Jason Romero introduced himself to her, and they began to spend time together. Within a few days, N.G. agreed to move with Romero to the Seattle area.

Early in their relationship, Romero told N.G. that he was "the boss."[1] N.G. believed she needed to ask his permission to do almost anything, even use the bathroom. Over the next several months, Romero pushed, choked, and punched N.G. He threatened to "bury [her] in the backyard."[2] He used an electrical cord to whip her, burned her with a hair straightening iron, and stabbed her in the buttocks with a knife. He recorded other humiliating abuse with a cell phone camera. On several occasions, he forced her to have sex with acquaintances for money. N.G. left Romero at one point, living for a time with relatives in Yakima and Kentucky, but by January 2013, she had returned to Romero.

At Romero's behest, N.G. began working as a dancer at a strip club. Club manager Leta Whitney and fellow dancer Tara Makepeace noticed bruises, burns, scars, and bite marks on N.G.'s body. N.G. denied that these injuries were the result of violence. In March 2013, after N.G. arrived at work with a black eye, Whitney contacted Tukwila patrol officer Michael Baisch. With Whitney present, Baisch told N.G. that Whitney had expressed concerns about domestic abuse and asked N.G. "if everything

---

[1] Report of Proceedings (RP) (July 28, 2014) at 497, 499-500, 505.
[2] Id. at 506.

2

was okay."[3] N.G. did not share any information about her situation with Baisch and declined his offer of help. Baisch did not observe any injuries. Baisch gave N.G. a pamphlet about domestic violence and encouraged her to contact the police or domestic violence advocates if she needed help.

On April 16, 2013, a distraught N.G. told Whitney she was ready to go to the police. N.G. made a statement to Baisch the next day. Baisch took photographs of N.G.'s bruises and burns. N.G. gave Baisch her cell phone, from which police retrieved photos and text messages. Baisch took a second statement from N.G. several days later.

After Baisch submitted his report, his sergeant assigned the case to Detective Dale Rock. After reviewing N.G.'s statements and taking statements from Whitney and Makepeace, Rock arrested Romero.

The State charged Romero with two counts of assault in the second degree (counts 1 and 4), two counts of promoting prostitution in the first degree (counts 3 and 5), two counts of assault in the fourth degree (counts 7 and 9), and one count each of felony harassment (count 2), assault in the third degree (count 6), and unlawful display of a weapon (count 8), all domestic violence offenses.

Before trial, the State moved to prohibit Romero from impeaching Baisch with evidence that Baisch left the Tukwila Police Department after lying to investigators about his sexual relationship with Whitney. The prosecutor argued that the relationship

---

[3] RP (July 23, 2014) at 281.

began after N.G. had made her statements to Baisch and was "not relevant to the facts in this particular case."[4]  Defense counsel countered that Baisch's lack of truthfulness about the relationship was relevant to his credibility and that because "[t]he jury's going to be asked to look at whether or not his view of the so-called victim's demeanor is accurate," Baisch's credibility was "critical."[5]

The trial court granted the State's motion:

> So, the State intends to call [Baisch] specifically about the contact that he had, that she had given a statement, and ask questions about [N.G]'s demeanor at the time of that statement.  So, within the context, the fact of an incident that occurred after the interview regarding Officer Baisch and another individual or manager at this business, the Court does not find that that's relevant at all and that will not be allowed in terms of any questioning.[6]

Following the court's ruling, Romero waived his right to a jury trial.

The State introduced testimony from a Washington State Patrol computer forensics detective, who testified about the contents of N.G.'s and Romero's phones. The State also called Baisch, Rock, Whitney, Makepeace, a police officer who testified about a phone call Romero made from the King County jail, a different officer who helped arrest Romero, the physician's assistant who treated N.G.'s knife wound, and N.G. herself.

Following the bench trial, the court found Romero guilty of all charges except assault in the third degree and unlawful display of a weapon.  The court found the

---

[4] RP (July 21, 2014) at 183.

[5] Id. at 184-85.

[6] Id. at 187.

4

aggravating factor of an ongoing pattern of abuse as to counts 1, 2, 3, and 5. The court found that the State did not prove the aggravating factor of deliberate cruelty as to count 1. The court imposed exceptional sentences upward on counts 1 and 5 and ruled that counts 1, 5, and 7 run consecutively, for a total term of confinement of 252 months.

Romero appeals.

## ANALYSIS

### Impeachment Evidence

Romero contends that by prohibiting him from impeaching Baisch about his relationship with Whitney and his untruthful statements about it, the trial court deprived him of his constitutional right to present a defense and confront adverse witnesses. He argues that no compelling interest justified the court's exclusion of this evidence, which he was entitled to elicit as probative of Baisch's credibility and bias.

We review constitutional claims de novo, as questions of law.[7] We review a trial court's decision to admit or exclude evidence or limit the scope of cross-examination for abuse of discretion.[8] A court abuses its discretion when it makes a manifestly unreasonable decision or bases its decision on untenable grounds or reasons.[9] A court

---

[7] State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010); State v. Jackman, 156 Wn.2d 736, 746, 132 P.3d 136 (2006).

[8] State v. McDonald, 138 Wn.2d 680, 693, 981 P.2d 443 (1999); Darden, 145 Wn.2d at 619.

[9] In re Det. of Duncan, 167 Wn.2d 398, 402, 219 P.3d 666 (2009).

bases its decision on untenable grounds or reasons when it applies the wrong legal standard or relies on unsupported facts.[10]

A criminal defendant has a constitutional right to confront his or her accuser.[11] The primary and most important component is the right to conduct a meaningful cross-examination of adverse witnesses.[12] In State v. Hudlow, our Supreme Court articulated a two-part test to determine if the exclusion of impeachment evidence against a State's witness violates the defendant's right to confrontation.[13] First, the evidence must be relevant; a criminal defendant has no constitutional right to the admission of irrelevant evidence.[14] Second, if the evidence is relevant, the court considers whether the State has demonstrated a compelling interest that outweighs the defendant's interest in admitting the evidence. If the evidence is not relevant, the court need not reach the "compelling interest" question.[15]

Under ER 608(b), the court may in its discretion allow cross-examination about specific instances of a witness's conduct in order to show a witness's character for truthfulness or untruthfulness. The right to cross-examine an adverse witness is not absolute, however.[16] "Courts may, within their sound discretion, deny cross-

---

[10] Id. at 403.

[11] U.S. CONST. amends. VI, XIV; WASH. CONST. art. 1, § 22; State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002).

[12] State v. Foster, 135 Wn.2d 441, 456, 957 P.2d 712 (1998).

[13] 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

[14] Id.; see also ER 402 ("Evidence which is not relevant is not admissible.").

[15] State v. Jones, 117 Wn. App. 221, 234 n.2, 70 P.3d 171 (2003).

[16] Darden, 145 Wn.2d at 620.

examination if the evidence sought is vague, argumentative, or speculative."[17] Relevant considerations include whether the evidence is collateral to the question presented in the litigation and whether there are alternative avenues available for impeachment.[18]

Reviewing courts have found abuse of discretion where the witness was crucial to the State's case.[19] But "[t]he need for cross-examination on misconduct diminishes with the significance of the witness in the state's case."[20]

Here, contrary to Romero's contentions and unlike the cases he cites,[21] Baisch's testimony was not crucial or central to the State's case. It was largely consistent with and cumulative of other witnesses' testimony. Whitney and Makepeace testified in greater detail about N.G.'s demeanor and injuries. A computer forensics detective testified about the contents of N.G.'s and Romero's cell phones, and a medical provider testified about her knife injury. And the court heard three days of testimony from N.G. herself. Baisch's misconduct, while arguably pertinent to the issue of his character for truthfulness or untruthfulness, was unrelated to his testimony in the case. It was not "of

---

[17] Id. at 620-621.

[18] State v. O'Connor, 155 Wn.2d 335, 351-53, 119 P.3d 806 (2005).

[19] State v. Clark, 143 Wn.2d 731, 766, 24 P.3d 1006 (2001). See also Darden, 145 Wn.2d at 617-18 (officer was the only State's witness who had seen alleged drug transactions and could identify defendant); State v. Smith, 130 Wn.2d 215, 226-27, 922 P.2d 811 (1996) (officer was the only witness to testify about defendant's apparent intoxication before his arrest); State v. York, 28 Wn. App. 33, 35-36, 621 P.2d 784 (1980) (undercover officer was the only witness to alleged drug sale and "his credibility was crucial to the State and to the defense").

[20] Clark, 143 Wn.2d at 766.

[21] Br. of Appellant at 16-18 (citing Darden, 145 Wn.2d at 620-22, and York, 28 Wn. App. at 35-36).

high probative value" for Romero, such that no State interest would be compelling enough to justify its exclusion.[22] Romero does not dispute that Baisch's relationship with Whitney and the false statements occurred after Baisch's contact with N.G. had ended.

The trial court acted within its discretion in excluding evidence of Baisch's misconduct as irrelevant.[23] Romero establishes neither a constitutional violation nor an abuse of discretion.

*Community Custody*

Next, Romero asserts, and the State concedes, that the trial court erred by imposing terms of confinement and community custody exceeding the statutory maximum. A sentencing court must impose community custody for violent offenses as defined by RCW 9.94A.030(55) and for crimes against persons as defined by RCW 9.94A.411(2). The term for violent offenses is 18 months; crimes against persons warrant a term of 12 months.[24] However, RCW 9.94A.701(9) directs that a term of community custody "shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021." While RCW 9.94A.701 applies expressly to standard range sentences, an exceptional

---

[22] See Hudlow, 99 Wn.2d at 16.

[23] Because we agree that the evidence was not relevant, we do not reach Romero's argument that the State had no compelling reason to exclude it. See Jones, 117 Wn. App. at 234 n.2.

[24] RCW 9.94A.701(2), (3)(a).

sentence may still violate RCW 9.94A.505(5), which prohibits a court from imposing a combined term of confinement and community custody that exceeds the statutory maximum.[25] And in State v. Boyd, our Supreme Court held that it is the trial court's responsibility to reduce the defendant's term of community custody to avoid such a result.[26]

For Romero's felony convictions, the sentencing court imposed the following terms of confinement:

- Count 1, assault in the second degree:[27] 120 months (statutory maximum).

- Count 2, felony harassment:[28] 60 months (statutory maximum).

- Count 3, promoting prostitution in the first degree:[29] 120 months (statutory maximum).

- Count 4, assault in the second degree: 84 months (36 months below the statutory maximum).

- Count 5, promoting prostitution in the first degree: 120 months (statutory maximum).

---

[25] In re Pers. Restraint of McWilliams, 182 Wn.2d 213, 217-18, 340 P.3d 223 (2014).

[26] 174 Wn.2d 470, 473, 275 P.3d 321 (2012).

[27] RCW 9A.36.021(1)(g).

[28] RCW 9A.46.020(1), (2)(b).

[29] RCW 9A.88.070(1).

In its oral ruling, the court stated that counts 1 through 5 "are all matters that call for community custody" and imposed an 18-month term for each count.[30] On the section of Romero's judgment and sentence pertaining to community custody, the trial court's only notation was to check the box for an 18-month term for "Violent Offense[s]," as defined by RCW 9.94A030.[31]

We accept the State's concession that the trial court exceeded its sentencing authority. While assault in the second degree is a violent offense,[32] promoting prostitution in the first degree is a crime against persons,[33] and felony harassment is not a community custody offense.[34] Thus, the sentencing court erred by assigning 18 months to Romero's promoting prostitution convictions and by assigning any term of community custody to his felony harassment conviction. The court also erred by attaching community custody terms to Romero's convictions with statutory maximum sentences. Accordingly, we remand to the trial court to amend Romero's judgment and sentence consistent with RCW 9.94A.701(9) and RCW 9.94A.505(5).[35]

---

[30] RP (Oct. 24, 2014) at 947.

[31] CP at 57-58.

[32] RCW 9.94A.030(55)(a)(viii).

[33] RCW 9.94A.411(2)(a) (listing crimes against persons).

[34] RCW 9.94A.701,.030, .411(2).

[35] See Boyd, 174 Wn.2d at 473.

## CONCLUSION

Because the trial court did not abuse its discretion by excluding irrelevant impeachment evidence, we affirm Romero's convictions. We remand for resentencing consistent with this opinion.

WE CONCUR:

_____

Trickey, J

_____