IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>       v.<br><br>ALVARO MIRELES LARA,<br><br>                Appellant. | No. 79794-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Alvaro Mireles Lara appeals his judgment and sentence for two counts of child molestation in the second degree and two counts of child molestation in the first degree. Mireles Lara contends that the trial court violated his Sixth Amendment rights to confront the witnesses against him and to present his defense when it limited his cross-examination of the victim, G.T. Mireles Lara sought to question G.T. about her allegedly false accusation that her mother's subsequent boyfriend touched her inappropriately. The court limited his questioning to the falsity of the accusation and excluded questioning as to its nature. Mireles Lara also asserts that his counsel was ineffective by eliciting testimony from the investigating detective as to whether she believed G.T. might not be telling the truth.

We conclude that the trial court did not abuse its discretion when it limited the scope of Mireles Lara's cross-examination of G.T. because the nature of the

Citations and pin cites are based on the Westlaw online version of the cited material.

allegation would be relevant only as propensity evidence. To this end, the trial court did not violate Mireles Lara's rights to confront a witness against him or to present his defense because he was able to attack G.T.'s credibility and present his defense theory that G.T. lied. Additionally, because Mireles Lara failed to show that no tactical reason existed for his counsel's question to the detective, Mireles Lara's ineffective assistance of counsel claim fails. Therefore, we affirm.

FACTS

Between 2012 and 2015, Mireles Lara and Marie Sandoval were in a dating relationship. Sandoval and her daughter, G.T., first moved in with Mireles Lara in 2013. G.T. later testified that she and Mireles Lara would play wrestle and that he would tickle her. She alleged that the first incident of Mireles Lara inappropriately touching her occurred in 2014. G.T. testified that after this first incident, the inappropriate touching continued, but she could not remember how many times Mireles Lara molested her that year. She testified that some of the incidents occurred after she and Mireles-Lara wrestled.

In early 2015, G.T. told her mother that Mireles Lara had been inappropriately touching her. Sandoval testified that she confronted Mireles Lara about the allegation, which he denied. Sandoval testified that at the time, she did not know who to believe, and after moving out for a couple of months, she and her children moved back in with Mireles Lara. G.T. maintained her account of the assaults, and she later testified that shortly after moving back in, Mireles Lara again touched her inappropriately and had her touch him inappropriately.

In early 2016, Sandoval left Mireles Lara. The incidents between G.T. and

2

Mireles Lara went unreported until October 2016 when G.T. filled out a school survey alleging that she had experienced sexual harassment. G.T. had been referring to an incident where one of her peers touched her posterior. Based on her response, Elaine Moy, G.T.'s school counselor, interviewed G.T. During the interview, G.T. disclosed that Mireles Lara had assaulted her. Moy called Child Protective Services, and King County Sheriff's Detective Robin Ostrum was assigned to investigate G.T.'s allegations. Detective Ostrum interviewed G.T. and G.T.'s mother. Detective Ostrum also interviewed Mireles Lara at his home. He denied the allegations and claimed that after G.T. made the accusation against him to her mother, G.T. apologized to him.

In May 2017, G.T. told Moy that Sandoval's new boyfriend, Michael Rodriguez, touched her inappropriately and "wrestl[ed] with her a lot," making her uncomfortable. Later that day, however, Sandoval called the school and had G.T. tell Moy that the allegation was false. When Detective Ostrum interviewed G.T. about this allegation, G.T. said that Rodriguez "had not really touched her, but she had gotten scared and uncomfortable" that he would "do to her what her mom's ex-boyfriend[, Mireles Lara,] had done." During the defense's interview with G.T., she also made an allegation against Mireles Lara's son.

PROCEDURE

In February 2019, the State charged Mireles Lara with two counts of child molestation in the second degree and two counts of child molestation in the first degree.

Pretrial, Mireles Lara moved to introduce evidence regarding G.T.'s

3

allegations against Rodriguez and Mireles Lara's son.  He sought to cross-examine G.T. on the matter as evidence that G.T. "would[,] . . . as a matter of . . . course[,] make this accusation, a similar accusation against other people."  The court concluded that any such evidence or questioning of G.T. was inadmissible under State v. Lee, 188 Wn.2d 473, 396 P.3d 316 (2017), and excluded any reference to the specifics of the allegations in Mireles Lara's opening statement.

At trial, Mireles Lara again sought to question G.T. about the allegation against Rodriguez.  The trial court said it was propensity evidence and noted that Mireles Lara had not shown evidence of motive.  Thus, the court limited the scope of Mireles Lara's cross-examination of G.T. to whether or not G.T. had ever made a false allegation against someone in the same household.

During its direct examination of G.T., the State asked her whether she had ever "accused another person that [she lived] with to Elaine Moy," and G.T. responded that she could not remember.  On cross-examination, however, G.T. admitted "it" was false:

> Q.   . . . Do you remember the question that counsel asked you?  Ms. Gregoire asked you about an allegation that you made, may have made.
> A.   I don't remember.  I don't remember.
> Q.   So, so would you remember if you called your friend and told Ms. Moy that what you had reported earlier was false?
> A.   Oh, yes.  Yes, it was false.

Thereafter, the State called Moy to the stand to clarify that the recanted allegation had nothing to do with Mireles Lara.

Also during trial, Mireles Lara's counsel asked Detective Ostrum whether "any of [G.T.'s] answers suggest[ed] to [her] that [G.T.] might not be telling the

truth." Detective Ostrum replied, "[T]here was nothing that screamed out to me [that] this kid's lying like crazy."

A jury found Mireles Lara guilty on all four counts.

ANALYSIS

Sixth Amendments Rights

Mireles Lara contends that when it limited his cross-examination of G.T. with regard to the nature of G.T.'s false allegation against Rodriguez, the trial court violated his Sixth Amendment rights to confront an adverse witness and to present a defense. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of our state constitution protect a defendant's right to confront an adverse witness and their right to present a defense. When reviewing a claim that an evidentiary ruling violated a defendant's Sixth Amendment rights, we apply a two-step review process. State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). First, we "review the trial court's individual evidentiary rulings for an abuse of discretion," and second, we "consider de novo the constitutional question of whether these rulings deprived [the defendant] of [their] Sixth Amendment right[s]." Arndt, 194 Wn.2d at 797-98.

*Evidentiary Ruling*

Mireles Lara asserts that the evidence was admissible and that the trial court erred in ruling otherwise. We disagree.

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in

conformity therewith." However, under ER 608(b), "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, . . . may, . . . in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness." Such "credibility evidence may include specific instances of lying, though 'their admission is highly discretionary under ER 608(b).'" Lee, 188 Wn.2d at 488 (quoting State v. Kunze, 97 Wn. App. 832, 859, 988 P.2d 977 (1999)).

Here, the information regarding the nature of the allegation against Rodriguez goes beyond the evidence necessary to show G.T.'s character for untruthfulness under ER 608(b) and runs afoul of ER 404(b). Specifically, while testimony regarding her false accusation provides evidence to impeach G.T.'s credibility, testimony that she allegedly lied about Rodriguez having touched her stomach can be relevant only to show that she also lied about Mireles Lara having touched her inappropriately. It therefore is relevant only to show action in conformity therewith, which is inadmissible under ER 404(b). Accordingly, we conclude that the trial court did not abuse its discretion in limiting cross-examination.

Mireles Lara asserts that the allegations were admissible under ER 404(b) to show motive of "garner[ing] attention from adults." He contends that the allegations were similar enough to show motive because both involved Sandoval's boyfriends, occurred after wrestling, and were reported to Moy. His assertion fails for two reasons. First, G.T. asserted that Mireles Lara rubbed her breasts and genitals and made her touch his genitals. But her allegation against

Rodriguez was only that he touched her stomach, patted her breasts and private area, and "slapped her butt." She also stated that Mireles Lara touched her inappropriately on countless occasions, in varying circumstances, but she alleged that Rodriguez had touched her only once. Thus, contrary to Mireles Lara's assertion, the allegations were not similar enough to evidence motive because the allegation against Rodriguez was distinguishable in its details and its number.

Second, the allegation against Rodriguez came *after* the allegations against Mireles Lara. Thus, the specifics of the accusation could not show that G.T.'s false allegation against Rodriguez and the attention she received therefrom motivated her to falsely accuse Mireles Lara. Accordingly, there is no evidence of motive connecting the allegations, and the trial court's evidentiary ruling was not an abuse of discretion.

*Right To Confront a Witness*

Mireles Lara contends that, whether or not the trial court abused its discretion in limiting his cross-examination of G.T., the evidentiary ruling violated his right to confront a witness. We disagree.

When reviewing a claim that the trial court's limitation on cross-examination violated the defendant's right to confront a witness under the federal and state constitutions, "[w]e apply a three-part test." Lee, 188 Wn.2d at 486, 488.

> "First, the evidence must be of at least minimal relevance. Second, if relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial. Finally, the State's interest to exclude prejudicial evidence

must be balanced against the defendant's need for the information sought, and only if the State's interest outweighs the defendant's need can otherwise relevant information be withheld."

Lee, 188 Wn.2d at 488 (quoting State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)). "The confrontation clause primarily protects 'cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness *as they may relate directly to issues or personalities in the case at hand.*'" Lee, 188 Wn.2d at 489 (quoting Davis v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)).

Lee controls our analysis. There, Donald Ormand Lee was convicted of two counts of third degree rape of a child. 188 Wn.2d at 478. The victim, J.W., had falsely accused another person of rape before she accused Lee. Lee, 188 Wn.2d at 478-79. On appeal, Lee asserted that the trial court violated his right to confront a witness when it prohibited him from asking whether J.W. ever reported a false *rape* accusation and, instead, allowed Lee only to ask whether J.W. had ever made a false accusation about another person to the police. Lee, 188 Wn.2d at 480. Our Supreme Court held that the trial court did not abuse its discretion in limiting the scope of Lee's cross-examination of J.W. Lee, 188 Wn.2d at 478. It further held that such limitation did not violate Lee's constitutional right to confront a witness because "the excluded information had minimal probative value in light of legitimate state interests." Lee, 188 Wn.2d at 486.

Similarly, here, the nature of the allegation was only of minimal relevance. Specifically, as to the first part of our analysis, because Mireles Lara presented

8

no evidence that the allegation showed motive, it was relevant only to ask the jury to infer that, because G.T. had made a false sexual assault allegation at a later time, she also falsely accused Mireles Lara. And "[e]vidence intended to paint the witness as a liar is less probative than evidence demonstrating a witness' bias or motive to lie in a specific case." Lee, 188 Wn.2d at 489. Thus, the evidence had a very low probative value.

As to the second part of our analysis, the State had an important interest in preventing questioning into the nature of the allegation because the evidence would disturb the fact-finding process. In particular, it could prejudice the jury into believing that G.T. had a propensity to lie about being molested by her mother's boyfriends. And "[w]e typically disfavor evidence intended to suggest that because a person acted wrongfully in the past, [they] must also be doing so now." Lee, 188 Wn.2d at 490 (citing ER 404(b)). Accordingly, the potential for prejudice against G.T., and thereby the fact-finding process, was extremely high.

Finally, like in Lee, the State's important interest in excluding the prejudicial information outweighs its low probative value. For these reasons, the trial court's limitation on Mireles Lara's cross-examination of G.T. did not violate his right to confront her.

Mireles Lara contends that Lee does not control because, there, "Lee did not seek review of whether the trial court abused its [discretion] in making the evidentiary ruling." Mireles Lara misconstrues the issue in Lee. There, the court stated that the only question before it was "whether the confrontation clause permitted Lee to specify that J.W.'s prior false allegation involved rape." 188

9

Wn.2d at 486. But because this question requires a court to review whether the trial court abused its discretion in its evidentiary ruling, the court necessarily answered that question. Thus, as discussed above, Lee controls.[1]

*Right To Present a Defense*

Mireles Lara asserts that the trial court's limitation of his cross-examination also violated his right to present a defense. We disagree.

When reviewing whether a trial court's evidentiary ruling violated a defendant's right to present a defense, we balance the State's interest in excluding the evidence against the defendant's need for the information that they seek to admit. Arndt, 194 Wn.2d at 812.

In Arndt, a jury convicted Shelly Arndt of aggravated first degree murder and first degree arson. 194 Wn.2d at 789. The trial court had limited the testimony of Arndt's expert witness, and the limitation resulted in the expert's inability "to present his opinion that the fire should have been classified as 'undetermined' rather than 'incendiary.'" Arndt, 194 Wn.2d at 796. On appeal, Arndt contended that this violated her right to present a defense. Arndt, 194 Wn.2d at 797. Our Supreme Court concluded that "[d]espite placing significant limitation on" Arndt's expert's testimony, the trial court did not violate her Sixth Amendment right. Arndt, 194 Wn.2d at 814. The court reasoned that "Arndt's proffered evidence was not excluded entirely and [her expert] was able to testify

---

[1] Mireles Lara's reliance on dissimilar case law also is unpersuasive. State v. York, 28 Wn. App. 33, 35-36, 621 P.2d 784 (1980) (concluding that where the witness was the only witness of the alleged criminal conduct and the sought-after cross-examination was the only way to impeach that witness's credibility, the trial court erred in limiting cross-examination).

at length for the defense, disputing [the State's expert's] conclusions and proposing an alternative" causal theory to support Arndt's defense. Arndt, 194 Wn.2d at 813.

Here, despite the limitation on his cross-examination of G.T., Mireles Lara still presented his central defense theory: G.T. falsely accused another household member, she falsely accused Mireles Lara, and the State's witnesses rushed to believe G.T.'s allegations against him. And Mireles Lara was able to attack G.T.'s credibility on multiple grounds. Specifically, he emphasized that "[G.T.] showed up in Elaine Moy's office and made an allegation about another member of that household and that very same day called back and said it was false." He also stressed G.T.'s statement to Moy that a boy at her school touched her posterior and her accusation against Mireles Lara's son that he too sexually molested her. In closing arguments, Mireles Lara asserted that these false accusations indicate a pattern of lying by G.T. Clearly, Mireles Lara presented his theory that G.T. was motivated by positive attention to make false accusations and that G.T. lied as a pattern with regard to sexual assault and harassment allegations. Accordingly, the defendant's need for the information pertaining to the nature of the allegation was minimal, and the prejudicial nature significant, resulting in a balance in favor of the State. Thus, the trial court's evidentiary ruling did not violate his right to present his defense.[2]

Mireles Lara disagrees and relies on State v. Jones for its proposition that

_____

[2] Because we conclude there was no error, we do not reach Mireles Lara's harmless error argument.

no State interest could be compelling enough to exclude evidence of "extremely high probative value." 168 Wn.2d 713, 721, 230 P.3d 576 (2010). But in Jones, the defendant sought to elicit testimony regarding "sexual conduct contemporaneous with [the] alleged criminal act," which the defendant asserted showed the victim's consent. 168 Wn.2d at 717. Consent was the only defense the defendant asserted. Jones, 168 Wn.2d at 718. Here, on the other hand, the testimony is not being admitted to show consent. Indeed, no consent can be given in this circumstance. In addition, as discussed above, the evidence has a very low probative value, and Mireles Lara still presented his defense theory. Thus, Jones is not persuasive.

### Ineffective Assistance of Counsel

Mireles Lara asserts that his counsel was ineffective when he elicited specific testimony from Detective Ostrum. We disagree.

"We review an ineffective assistance of counsel claim de novo." State v. Shaver, 116 Wn. App. 375, 382, 65 P.3d 688 (2003). To succeed on a claim for ineffective assistance of counsel, a defendant "must show (1) that defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness; and (2) that the deficient performance resulted in prejudice, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed." State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

Under the first prong, we employ "a strong presumption that defense counsel's conduct is not deficient." Reichenbach, 153 Wn.2d at 130. "However,

12

there is a sufficient basis to rebut such a presumption where there is no conceivable legitimate tactic explaining counsel's performance." Reichenbach, 153 Wn.2d at 130. We consider all of the surrounding circumstances when deciding whether the counsel's performance was deficient. State v. Estes, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017).

Here, Mireles Lara's claim fails on the first prong. His trial counsel asked the question to bolster his defense theory that the State's witnesses believed G.T. without further investigation. The entirety of the exchange is as follows:

> Q: . . . Did any of [G.T.]'s answers suggest to you that she might not be telling the truth?
> A. I did -- you know, just as far as my observations of her and listening to her, there was nothing that screamed out to me this kid's lying like crazy. I did not get that sense from her.
> But again, without some other frame of reference or other information –
> Q. Sure.
> A. -- again, I'm not in a place where I can challenge what she is saying to me.
> Q. Did it concern you that she didn't remember when the first time happened?
> A. Absolutely not.
> Q. Okay. And did it concern you that she didn't remember the first time?
> A. Absolutely not.

In closing statements, counsel emphasized that there was no corroborating evidence of G.T.'s allegations and that the situation involved the "perfect storm of a rush to judgment." He called Detective Ostrum "a fairy godmother" and explained:

> [S]he interviewed Alvaro, but, but she didn't ask him questions about his version or his account and with each -- other than [G.T.], she didn't go back and talk to one witness again to compare the information that she had received from the other witnesses.
> Is that, is that behavior, that investigation, consistent with

13

conducting an investigation, with trying to find the truth? Where counsel's challenged conduct supports its defense theory, performance is not deficient. See, e.g., State v. Breitung, 173 Wn.2d 393, 399-401, 267 P.3d 1012 (2011) (holding that where the defense theory was that no assault occurred, the defendant's counsel did not err when it did not request a lesser included offense instruction). Counsel's questioning, in the context of the defense theory, shows that counsel elicited the testimony to support its theory that Detective Ostrum jumped to the conclusion that G.T. was telling the truth and took G.T. at her word. Therefore, we conclude that Mireles Lara's counsel's performance was not deficient, and Mireles Lara's claim fails.

We affirm.

_____

WE CONCUR:

_____          _____