

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 2 0 2017

Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on July 20, 2017

Susan L Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 93035-0 |
| | ) | |
| Respondent, | ) | |
| | ) | EN BANC |
| v. | ) | |
| | ) | |
| TRAVIS LEE LILE, | ) | FILED     JUL 2 0 2017 |
| | ) | |
| Petitioner. | ) | |
| | ) | |

FAIRHURST, C.J.—Travis Lee Lile appeals his convictions for multiple assaults and resisting arrest. A jury found beyond a reasonable doubt that Lile, acting as the aggressor, attacked Christopher Rowles and Amanda Millman and then struck Bellingham Police Officer Jeremy Woodward while the officer attempted to arrest Lile for assaulting Rowles and Millman. The Court of Appeals affirmed after holding that the trial court committed nonreversible error in improperly denying Lile's timely affidavit of prejudice filed in accordance with RCW 4.12.050. *State v. Lile*, 193 Wn. App. 179, 373 P.3d 247 (2016).

We granted Lile's petition for review and the State's cross petition for review on two issues: (1) judicial disqualification and (2) the trial court's exclusion of evidence impeaching Rowles' asserted nonviolent nature. *State v. Lile*, 186 Wn.2d 1016, 380 P.3d 523 (2016). We affirm the Court of Appeals on both issues because in neither instance did the trial court commit error. Although we are affirming, we reverse the Court of Appeals holding that the trial court's ruling on an agreed continuance was not discretionary.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.     Factual background

Two intoxicated groups crossed paths on a Bellingham sidewalk one evening in 2013. Millman and Alyssa Powell walked in one direction, ahead of their companions Rowles and Taylor Powell. Alyssa Powell was particularly intoxicated, stumbling as she walked. United States Navy sailors Lile, Sean Duff, and Allen Owens, along with civilian Cameron Moore, walked in the opposite direction. Lile's group had recently left a party in which Lile had admittedly consumed "four, maybe five beers" and "a shot-and-a-half of Crown" over a period of "about five hours." 6 Verbatim Report of Proceedings (VRP) (Mar. 25, 2014) at 865.[1]

---

[1] As discussed below, Whatcom County Superior Court Judges Ira Uhrig and Deborra Garrett both presided over portions of Lile's criminal proceedings. Two sets of VRPs for these proceedings were produced: a one-volume VRP for the pretrial and posttrial proceedings presided over by Judge Uhrig (designated as VRP) and a seven-volume VRP for the pretrial, trial, and posttrial proceedings presided over by Judge Garrett (designated as VRP volumes 1 through 7).

Alyssa Powell allegedly bumped Lile as they passed.[2] Lile turned around, exchanging words with the women while he continued walking backwards. When Lile reached Rowles and Taylor Powell, he made contact with Rowles, pushing Lile forward. Rowles claimed any contact was incidental. Duff and Moore indicated that Rowles appeared to change direction as Lile approached and "shoulder check[ed]" Lile as their paths met. 5 VRP (Mar. 24, 2014) at 668, 776.

Lile next exchanged words with Rowles and Taylor Powell as he regained his balance and turned around to face them. Lile claims they were "into [his] face."[3] 6 VRP at 868. Lile then punched Rowles in the face. The vast majority of the testimony indicates that neither Rowles nor Taylor Powell made any aggressive moves toward Lile or his three male companions up to this point. Furthermore, no one—including Lile—disputes that Lile threw the first punch. A scuffle ensued between the men in the two groups.

Millman approached the scuffling men, urging them to stop. Lile hit her in the face, fracturing her jaw, knocking out some teeth, concussing her, and rendering her briefly unconscious. Owens then pulled Lile from the fracas, and they began to walk away.

---

[2] Lile's group testified that no bump occurred. They claim Lile attempted to flirt with Alyssa Powell and Millman, who rebuffed him.

[3] Owens later described the incident to naval investigators as Rowles and Taylor Powell "kind of [getting] in [Lile's] face a little bit." Clerk's Papers at 382.

Officer Woodward was patrolling the area in his police cruiser and noticed the verbal altercation before blows began. He parked his vehicle some 40 yards away and responded on foot after observing Lile punch Rowles. Officer Woodward saw Lile strike Millman as the officer continued toward the fracas. By the time Officer Woodward reached the group, Lile was walking away.

Officer Woodward told Lile to "'stop, police. You're under arrest.'" 2 VRP (Mar. 17, 2014) at 106. Officer Woodward attempted to grab Lile, who took flight. A chase ensued. Once he reached Lile, Officer Woodward jumped onto Lile's back. Lile struggled, striking Officer Woodward in the face. Officer Josh McKissick arrived shortly thereafter and assisted Officer Woodward in finally subduing and arresting Lile.

B.    Criminal proceeding

Lile was charged with assaulting Millman, Rowles, and Officer Woodward. He was also charged with resisting arrest. Whatcom County Superior Court Judge Ira Uhrig was initially assigned the criminal case, setting the matter for a January 22, 2014 status hearing and a February 3, 2014 trial.[4] During the January 22, 2014 status hearing, Lile's attorney informed Judge Uhrig that "[the prosecuting attorney]

---

[4] Lile claims the Whatcom County Superior Court routinely schedules a status hearing one week prior to trial date for criminal cases on a rolling basis. If the parties inform the judge they are ready for trial during the status hearing, they appear the following week on the appointed date. The presiding judge will then use a rule of priority to determine which cases to try. Untried cases are "'bumped for one week.'" Reply to State's Cross Pet. for Review at 6; Corrected Suppl. Br. of Pet'r at 5.

4

and I were talking about the case and we propose to move the case one week." VRP (Jan. 22, 2014) at 3. Judge Uhrig orally granted the continuance, issuing a written order to that effect February 3, 2014. On February 4, 2014, Lile's attorney submitted a motion to sever, asking the court to order separate trials for Lile's alleged assaults on Millman and Rowles from his assault on Officer Woodward. During the February 6, 2014 status hearing, before Judge Uhrig ruled on the motion to sever, Lile's attorney informed Judge Uhrig that Lile had filed an affidavit of prejudice against him.

The prosecuting attorney asserted the affidavit was not timely under RCW 4.12.050 because Judge Uhrig's ruling on the January 22, 2014 continuance motion preceded the affidavit and was discretionary.

Lile's attorney explained:

> What happened was this was the Super Bowl weekend. [The prosecuting attorney] came up and said do you want to continue this for a week? It would [not] be a problem. I said no problem . . . [s]o, we came before the court and presented the order in that context.

VRP (Feb. 6, 2014) at 13. Judge Uhrig indicated the continuance ruling was discretionary, as he had denied such requests in the past. As a result, he ruled the affidavit untimely. He then denied Lile's motion to sever. Lile did not later renew the motion to sever, an option provided by CrR 4.4(a)(2).

Additional delays occurred because a number of witnesses were serving in the navy. Their appearances had to be coordinated and arranged. Judge Uhrig indicated

5

in his final status hearing the delays in Lile's proceeding had created a potential conflict with another case. Judge Uhrig was unable to preside over Lile's trial. The case was transferred to Judge Deborra Garrett, one of two other Whatcom County Superior Court Judges. Judge Garrett heard Lile's remaining pretrial motions.

Lile submitted a motion in limine to Judge Garrett to introduce evidence, for purposes articulated in ER 404(b), of prior protection orders and related petitions against Rowles submitted by Nicole Foster, a past girlfriend of Rowles. Judge Garrett denied the motion, finding the "prior bad actions . . . [not] sufficiently similar to the events that occurred in this case[] that a common scheme or plan can be deduced from them." 1 VRP (Mar. 13, 2014) at 12; *see* ER 404(b). Lile did not seek our review on this pretrial ruling.

About a week later, once the trial began, Rowles provided the following testimony on direct examination:

> Q. Well, how come you didn't like defend yourself [before Lile punched you]?
> A. Everything kind of caught me by surprise . . . . I don't get into too many fights. I don't think I've ever been in a fight. . . .
> Q. Did you have time to get your hands up or --
> A. No.
> Q. -- do anything?

4 VRP (Mar. 19, 2014) at 508. During cross-examination, Rowles provided the following testimony:

> Q. Okay. And did [the verbal altercation between Lile and the women] cause you concern?

6

A. A little bit. You know, it's words though, I mean they don't really hurt people to a point so I just, I'm not a fighting guy so I just let things kind of roll of my chest here.

*Id.* at 528.

Q. Are you punching back?
A. No.
Q. Why not?
A. Still a little in shock. I didn't, I'm not a fighter. I didn't want to be a fighter.

*Id.* at 538. Lile asserted to the court that these statements "[gave] the impression [Rowles is] a man of peace . . . that opens the door to bring up . . . those harassment[] [petitions filed by Foster] because those constitute fighting." *Id.* at 543. "I don't believe it comes [in] under [ER 404(b)], we already lost that. This is purely a simple [matter of] whether I'm allowed to follow up logical cross-examination based on the statement" for purposes of impeachment pursuant to ER 608(b)(1). *Id.* at 545. Lile provided an offer of proof—domestic abuse allegations contained in Foster's most recent petition for a protection order. The court denied Lile's request. It held that the allegations contained in the petition were irrelevant to Rowles' credibility and collateral to the events at issue in this case.

Lile was convicted on all charges. Judge Garrett entered a judgment and sentence consistent with Lile's conviction.

7

C.     Appellate proceeding

Lile raised a number of issues on appeal. The Court of Appeals affirmed all issues. *Lile*, 193 Wn. App. at 214. It held that the trial court's ruling on the continuance was nondiscretionary, but that the trial court's error in denying Lile's affidavit of prejudice was not a basis for reversal because Judge Uhrig did not preside over Lile's trial and Lile had an opportunity to renew his motion to sever pursuant to CrR 4.4(a)(2) with Judge Garrett. *Id.* at 193-97.

Lile petitioned for review on eight issues, and the State cross petitioned on one. We accepted review only on the affidavit of prejudice and impeachment issues. Order, *State v. Lile*, No. 93035-0 (Wash. Sept. 29, 2016). Supplemental briefing followed. Lile agrees with the Court of Appeals that the ruling on the continuance was not discretionary, but argues the trial court's error was a basis for reversal. The State argues the ruling was discretionary and the affidavit of prejudice was not timely; therefore, Judge Uhrig was qualified to rule on the severance motion. Lile disagrees with the Court of Appeals holding that Judge Garrett did not abuse her discretion in precluding impeachment of Rowles using allegations contained in the protection order petition.

## II. ISSUES

1.     Was the joint continuance motion discretionary, making Lile's affidavit of prejudice untimely and leaving Judge Uhrig qualified to hear the motion to sever?

8

2. Did the trial court abuse its discretion when it denied Lile's request to impeach Rowles through cross-examination regarding Foster's protection order petition?

### III. ANALYSIS

A. A ruling on a joint continuance motion is discretionary

A party has the right to disqualify a trial judge for prejudice, without substantiating the claim, if the requirements of RCW 4.12.050 are met. *State v. Chamberlin*, 161 Wn.2d 30, 41, 162 P.3d 389 (2007). RCW 4.12.040(1) provides that "[n]o judge of a superior court . . . shall sit to hear or try any action or proceeding when it shall be established . . . that said judge is prejudiced against any party or attorney." To establish prejudice, a party can file a motion supported by an affidavit indicating that the party cannot, or believes that it cannot, "have a fair and impartial trial before such judge." RCW 4.12.050(1).

"To be timely, an affidavit of prejudice must be made 'before the judge presiding has made any order or ruling involving discretion.'" *In re Recall of Lindquist*, 172 Wn.2d 120, 130, 258 P.3d 9 (2011) (quoting RCW 41.12.050(1)). RCW 4.12.050(1) also provides that "the arrangement of the calendar, the setting of an action, motion or proceeding down for hearing or trial, the arraignment of the

accused in a criminal action or the fixing of bail shall not be construed as a ruling or order involving discretion within the meaning of this proviso."[5]

1.    Relevant precedent

We have consistently held that a ruling on an *opposed* continuance motion is discretionary. *See, e.g., Lindquist*, 172 Wn.2d at 130; *State v. Maxfield*, 46 Wn.2d 822, 829, 285 P.2d 887 (1955). However, we have not been consistent on whether a ruling on an agreed or *unopposed* continuance motion is discretionary. *See State ex rel. Floe v. Studebaker*, 17 Wn.2d 8, 15-17, 134 P.2d 718 (1943); *State v. Espinoza*, 112 Wn.2d 819, 822-23, 774 P.2d 1177 (1989); *State v. Dennison*, 115 Wn.2d 609, 620 n.10, 801 P.2d 193 (1990). This is a question of law we review de novo. *Kovacs v. Dep't of Labor & Indus.*, 186 Wn.2d 95, 97, 375 P.3d 669 (2016). We hold, for the same reasons that a ruling on an opposed continuance is discretionary, that a ruling on an agreed or unopposed continuance is discretionary for purposes of RCW 4.12.050.

---

[5] Recently enacted legislation, effective July 23, 2017, revises RCW 4.12.050 as follows: "Notice of disqualification must be filed . . . before the judge has made any discretionary ruling in the case . . . . Even though they may involve discretion, the following actions by a judge do not cause the loss of a right to file a notice of disqualification against that judge: Arranging the calendar, setting a date for a hearing or trial, *ruling on an agreed continuance* . . . ." LAWS OF 2017, ch. 42, § 2 (emphasis added) (underline omitted). Justice Madsen believes the discretionary nature of a ruling is irrelevant for purposes of RCW 4.12.050. *See* concurrence (Madsen, J.). She suggests that the recent change to the statute supports this view. We disagree. The recent change merely expands the list of potentially discretionary acts that do not serve as a basis for the loss of the right of disqualification. The legislature did not depart from its basic discretionary/nondiscretionary framework in the recent change. Nor is Justice Madsen's reliance on legislative testimony persuasive. *See* concurrence (Madsen, J.) at 3 n.1. Such testimony has no bearing on the intent of the legislature. *See Wilmot v. Kaiser Alum. & Chem. Corp.*, 118 Wn.2d 46, 64, 821 P.2d 18 (1991) ("testimony before a legislative committee is given little weight"). And here, the legislature gave no indication that its change was a mere clarification or is to have retroactive effect.

A trial court's ruling on an opposed continuance is discretionary because "'the court must consider various factors, such as diligence, materiality, due process, a need for orderly procedure, and the possible impact of the result on the trial.'" *Lindquist*, 172 Wn.2d at 130 (quoting *State v. Guajardo*, 50 Wn. App. 16, 19, 746 P.2d 1231 (1987)). These considerations similarly apply to rulings on agreed continuances, yet the Court of Appeals held otherwise. It reached this holding by misinterpreting relevant precedent and focusing on the form of a continuance request, rather than its substance or impact.

In *Floe*, we held that a trial court's approval of a stipulated proposed order signed by both parties consolidating two cases and continuing one of the cases was not discretionary. At the time, "[w]e d[id] not believe . . . the court is required to exercise discretion . . . where all the parties have stipulated that such [an] order be made." 17 Wn.2d at 17. Given the fact that continuing the case was necessary to effect consolidation and that *Floe* was a civil proceeding, the precedential effect of *Floe*, particularly for a criminal case, is suspect. More recently in *Espinoza*, 112 Wn.2d at 822-23, a criminal proceeding, we noted in dictum that a ruling on a continuance motion "requested by respondent and joined by the State" is discretionary. Shortly thereafter, in *Dennison*, also a criminal proceeding, we found that a trial court's ruling on a continuance motion the parties stipulated to was discretionary. 115 Wn.2d at 620 & n.10. We cited *Espinoza* for this finding. *Id.* at 620 n.8. We also noted that former CrR 3.3(h) (1986), *renumbered as* CrR 3.3(f), provides trial courts discretion in granting

continuances, regardless of what form the continuance request may take.[6] *Id.* at 620 n.10.

The Court of Appeals held that the continuance ruling was not discretionary because: (1) neither *Espinoza* nor *Dennison* specifically overruled *Floe* and (2) we reaffirmed *Floe* in *State v. Parra*, 122 Wn.2d 590, 859 P.2d 1231 (1993). *Lile*, 193 Wn. App. at 193 n.5. Neither of these findings are supportable.

First, a specific reference to *Floe* was not required in *Espinoza* or *Dennison* to overrule *Floe*. "A later holding overrules a prior holding sub silentio when it directly contradicts the earlier rule of law." *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 280, 208 P.3d 1292 (2009) (citing *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 403, 823 P.2d 499 (1992); *Indus. Coatings Co. v. Fid. & Deposit Co. of Md.*, 117 Wn.2d 511, 515-18, 817 P.2d 393 (1991)). While *Dennison* and *Espinoza* involved stipulated or unopposed continuance motions, rather than the stipulated proposed continuance order described in *Floe*, the relevant issue in all three decisions was the same—whether agreed continuance requests, in the form of stipulated motions, unopposed motions, or a stipulated proposed order, are discretionary for purposes of

---

[6] This is not a basis to distinguish *Floe* from *Dennison* and *Espinoza*. A trial court's discretion to grant or deny continuances has not changed since the time *Floe* was decided. *See* former Rem. Rev. Stat. § 2135 (1877), *recodified as* RCW 10.46.080.

RCW 4.12.050. In *Dennison* and *Espinoza*, we found that they were. These decisions control.

Second, our decision in *Parra* did not reaffirm *Floe*'s holding that an agreed continuance is not discretionary. 122 Wn.2d at 590. In fact, no continuance request was made by either party in *Parra*. In *Parra*, we referenced *Floe* in order to support the proposition that the substance and impact of a request is the most relevant consideration for assessing whether discretion is employed in ruling on the request, *regardless of what form the request takes*.

*Parra* involved a ruling in a criminal proceeding on an omnibus application containing 23 potential defense motions and 20 potential state motions, all of which were unopposed. *Id.* at 591. We held that ruling was discretionary because to either "grant or deny a motion involves discretion" and the substance of the request, rather than its form, controls. *Id.* at 601. We noted that certain stipulated agreements, like the one in *Floe*, would not "invoke[] the discretion of the court for . . . resolution" and, therefore, would not be discretionary *Id.* at 600. But we also cautioned that for such a ruling to be nondiscretionary, a stipulated agreement must "affect[] *only* the rights or convenience of the parties, [and] *not* involv[e] any interference with the duties and functions of the court." *Id.* at 603 (emphasis added). We further noted that for these purposes, "a party's decision not to object [to a motion] does not constitute a stipulation by that party." *Id.* at 602. "To either grant or deny a motion involves discretion." *Id.* at

13

601. While we referenced *Floe* in *Parra*, we did not reaffirm *Floe*'s holding in *Parra* that an agreed continuance is not discretionary.

2.      Judge Uhrig's continuance ruling was discretionary

Continuances, even when unopposed, have a significant impact on the efficient operation of our courts and the rights of the parties, particularly in criminal proceedings. Correspondingly, CrR 3.3(h) provides trial courts discretion in granting them. Like the omnibus application in *Parra*, the continuance ruling here impacted the "duties and functions of the court,"[7] and therefore involved discretion. 122 Wn.2d at 603.

Lile argues *State v. Dixon*, 74 Wn.2d 700, 446 P.2d 329 (1968), rather than *Parra*, *Dennison*, and *Espinoza*, controls. In *Dixon*, we held that it would be "manifestly unfair" to require a defendant to use his single opportunity to file an affidavit of judicial prejudice at a scheduling hearing when it was unclear whether the defendant would ultimately wind up with the same judge at trial. *Id.* at 703. Lile's argument fails because (1) *Dixon* was decided before our holdings in *Dennison*, *Espinoza*, and *Parra* and (2) it is factually distinguishable from this case. *Dixon* did not involve a continuance ruling. *Dixon* involved a ruling on a motion to renote, to an earlier hearing date, a petitioner's

---

[7] As Judge Uhrig noted, the court's schedule following the continuance had become a "frustrat[ing] . . . dilemma" of competing demands for court time. VRP (Feb. 18, 2014) at 39. He wished to "make every effort to make sure this case gets out . . . without any further delay," *id.* at 43, which ultimately proved impossible, due in part to the continuance at issue in this case. Judge Uhrig transferred the case to Judge Garrett when Judge Uhrig's schedule could no longer accommodate Lile's trial.

14

motions to dismiss and suppress. *Id.* at 700-01. Such an action, unlike a continuance ruling, is a preliminary matter specifically designated by the statute as not discretionary. *See* RCW 4.12.050(1) (setting a motion for hearing is discretionary).

Lile also argues that a continuance is no more than a "calendaring matter" falling within the ambit of RCW 4.12.050(1). Suppl. Br. of Pet'r at 6. This argument is not supported by the language of the statute, which we have previously construed as distinguishing "preparing the calendar from granting a continuance." *Lindquist*, 172 Wn.2d at 130-31; *see Maxfield*, 46 Wn.2d at 829 (a ruling on a continuance motion is not a calendaring act because it invokes the discretion of the court); *see also State ex rel. Lefebvre v. Clifford*, 65 Wash. 313, 314, 118 P. 40 (1911) (a ruling on an opposed continuance motion is discretionary).[8]

Lastly, Lile claims that even if a ruling on an unopposed continuance could be discretionary, the facts of this case do not support such a finding. Given the volume of cases assigned to Judge Uhrig for his status hearings on January 22, 2014, "[t]here [wa]s not enough time to consider the specific merits of any case at the status hearing" and, therefore, no discretion could have been exercised. Corrected Suppl. Br. of Pet'r at 6. If either party opposed the continuance motion during the status hearing, Lile asserts Judge Uhrig would have set over the motion for argument at a criminal hearing

---

[8] Nor is this proposition supported by the recently enacted change to RCW 4.12.050. "Arranging the calendar" is a separate discretionary act from a "ruling on an agreed continuance." LAWS OF 2017, ch. 42, § 2(2) (underline omitted).

15

later in the week, and only then could he have exercised discretion. But this assertion is belied by the record. Judge Uhrig indicated he has "denied continuances [at status hearings] in the past. It doesn't happen often but it does happen." VRP (Feb. 6, 2014) at 13.

Judge Uhrig's continuance ruling was discretionary, making him qualified to rule on Lile's severance motion. We affirm the trial court.

3. A change of judge is a matter or right

The Court of Appeals ultimately affirmed the trial court even though it found Judge Uhrig's continuance ruling not discretionary. It concluded that judicial prejudice need not constitute reversible prejudice, based on *State ex rel. LaMon v. Town of Westport*, 73 Wn.2d 255, 438 P.2d 200 (1968), *overruled on other grounds by Cole v. Webster*, 103 Wn.2d 280, 692 P.2d 799 (1984). *Lile*, 193 Wn. App. at 194. But *LaMon* is the rare exception to the rule.[9] *See Parra*, 122 Wn.2d at 595 (only in extraordinary circumstances may a change to a judge be avoided following a timely affidavit of prejudice); *Marine Power & Equip. Co. v. Dep't of Transp.*, 102 Wn.2d 457, 465, 687 P.2d 202 (1984) (suggesting that such a circumstance may

---

[9] In *LaMon*, a motion was made to dismiss a person who all parties agreed was not a proper party to the lawsuit. 73 Wn.2d at 260. The trial court granted the dismissal, but only after the person had already filed an affidavit of prejudice. We found the trial court's ruling on the motion to be error, but that the error did not warrant reversal because not every error is reversible error. *Id.* at 261.

include when "difficulties of obtaining an alternate judge are proven by the court's factual findings to be insurmountable").

The statute is unqualified. "No judge . . . shall sit to hear or try any action or proceeding when it shall be established . . . that said judge is prejudiced against any party." RCW 4.12.040(1). "Any party . . . may establish such prejudice by motion, supported by affidavit . . . that such party . . . believes that he or she cannot[] have a fair and impartial trial before such judge." RCW 4.12.050(1). "'[A] party litigant is entitled, as a matter of right, to a change of judges upon the timely filing of a motion and affidavit of prejudice.'" *Lindquist*, 172 Wn.2d at 129 (quoting *Dixon*, 74 Wn.2d at 702); *see Parra*, 122 Wn.2d at 595 (emphasizing the "mandatory, nondiscretionary nature of affidavits of prejudice"); *Dennison*, 115 Wn.2d at 620 (confirming that a litigant is entitled to change "'as a matter of right'" (quoting *LaMon v. Butler*, 112 Wn.2d 193, 201, 770 P.2d 1027 (1989))); *Espinoza*, 112 Wn.2d at 823 (confirming change is a "matter of right"); *Marine Power & Equip. Co.*, 102 Wn.2d at 463 (noting that a party has the "right to one change of judge without inquiry"), 460 (once prejudice is deemed established, the judge is "'divested of authority to proceed further'" (quoting *Dixon*, 74 Wn.2d at 702)); *Maxfield*, 46 Wn.2d at 829 (confirming change is "a matter of right").

Absent extraordinary circumstances, the prejudice established by RCW 4.12.050 is, in and of itself, *harmful* prejudice. *See State v. Britton*, 27 Wn.2d 336,

17

341, 178 P.2d 341 (1947) (An error is harmless if it does not "prejudic[e] . . . the substantial rights of the party."). A trial court's failure to grant the requested change is a basis for reversal.

B.    The trial court did not abuse its discretion in limiting Lile's impeachment during cross-examination

The confrontation clause of the Sixth Amendment (applicable to the state via the Fourteenth Amendment) guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. CONST. amends. VI, XIV. Similarly, article I, section 22 of the Washington Constitution guarantees the right of a defendant to "meet the witnesses against him face to face." Cross-examination is the "principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). But this right is not absolute. "The scope of such cross examination is within the discretion of the trial court." *State v. Russell*, 125 Wn.2d 24, 92, 882 P.2d 747 (1994); *see State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002) (confrontation right "limited by general considerations of relevance").

Rowles testified on direct examination that he did not "think [he'd] ever been in a fight." 4 VRP at 508. On cross-examination, he testified he is "not a fighting guy," *id.* at 528, and "not a fighter . . . didn't want to be a fighter," *id.* at 538. Lile sought to challenge those statements with the following question: "'[I]sn't it true you have a harassment order for pushing somebody down on the bed, getting control

18

over them, wouldn't you call this a fight?'" *Id.* at 545. The trial court denied the request. *Id.* at 548-49.

We review a cross-examination scope limitation for a manifest abuse of discretion. *State v. Garcia*, 179 Wn.2d 828, 844, 318 P.3d 266 (2014); *Darden*, 145 Wn.2d at 619. A manifest abuse of discretion arises when "the trial court's exercise of discretion is 'manifestly unreasonable or based upon untenable grounds or reasons.'" *Darden*, 145 Wn.2d at 619 (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). We need not agree with the trial court's decision for us to affirm that decision. We must merely hold the decision to be reasonable.

Lile alleges Rowles' testimony about not being a fighter opened up the door to cross-examination on the issue and it was reversible error for the trial court to deny him the opportunity to pursue this line of questioning. He cites *State v. Gefeller* to support this assertion. 76 Wn.2d 449, 458 P.2d 17 (1969). But *Gefeller* is distinguishable. At issue in *Gefeller* was the trial court's decision to *permit* cross-examination. *Id.* at 454-55. At issue in this case was the trial court's decision to *limit* cross-examination. Nor does *Gefeller* stand for the proposition Lile asserts: that Rowles, absent an effort by the State to demonstrate his peaceful nature, can open up the door to this line of questioning. In *Gefeller*, the defense initiated a line of questioning with a witness, dropped it when it proved fruitless, and then claimed error when the court allowed the State to pursue it. *Id.* Here, the prosecuting

19

attorney's question of "how come you didn't like defend yourself," 4 VRP at 508, does not appear intended to put forth testimony demonstrating Rowles peaceful nature. *See id.* at 543-44 (prosecuting attorney claims "there weren't any questions elicited to [bring forth Rowles non-violent nature]"). Rather, it followed earlier testimony from Millman and Officer Woodward describing Lile's unexpected and overly aggressive reaction to incidental contact with Rowles, and appears intended to further demonstrate Lile's unexpected and overly aggressive reaction by virtue of Rowles inability to respond.

Further, ER 608 squarely addresses the impeachment evidence Lile sought to introduce. It provides that specific instances of a witness' conduct, introduced for purposes of attacking that witness' credibility, may not be proved by extrinsic evidence. But specific acts may be inquired into on cross-examination, at the discretion of the trial court, if probative for truthfulness. ER 608(b)(1). "In exercising its discretion, the trial court may consider whether the instance of misconduct is relevant to the witness' veracity on the stand and whether it is germane or relevant to the issues presented at trial." *State v. O'Connor*, 155 Wn.2d 335, 349, 119 P.3d 806 (2005).

We review a trial court's decision to admit or exclude evidence under ER 608(b)(1) for an abuse of discretion and reverse "only if no reasonable person would have decided the matter as the trial court did." *Id.* at 351; *see State v. Clark*, 143

Wn.2d 731, 766, 24 P.3d 1006 (2001) (applying similar standard). We must assess whether it was reasonable for Judge Garrett to conclude the allegations contained within Foster's final protection order petition were irrelevant to Rowles' truthfulness and collateral to the issues at hand. *O'Connor*, 155 Wn.2d at 350-52. We do not make our own relevancy determination.

While this is perhaps a close call, we cannot say the trial court abused its discretion in limiting Lile's cross-examination of Rowles. A reasonable person may have decided the matter as Judge Garrett did. *Id.* at 351. On this basis, we affirm the trial court.

Lile claims his inquiry into Rowles' abuse of Foster was permissible under ER 608(b)(1) as "who started the fight was exclusively a credibility conflict between the Navy men and Rowles and his friends, and because Rowles' statements that he was 'not a fighter' were demonstrably false." Corrected Suppl. Br. of Pet'r at 18. But given the overwhelming evidence that Lile was the aggressor, any evidence resulting from the line of inquiry would have been irrelevant. Lile never put who started the fight at issue. Millman testified that Lile "just turned and started swinging." 3 VRP (Mar. 18, 2014) at 286. According to Officer Woodward, neither Taylor Powell nor Rowles made *any* aggressive moves before Lile's first punch; in fact, Rowles was "kind of backing up" when Lile punched him. 2 VRP at 101. Lile admitted he threw the first punch. *See* 6 VRP at 868 (claiming "I hit him because I

21

was very frightened"). Further, Lile's own witnesses indicated that Lile appeared to do so in aggression. Owens said that Lile appeared more "irritate[d]" than scared by Rowles' shoulder check and that if Owens had been in the same situation as Lile, he "wouldn't have thrown the first punch." Clerk's Papers (CP) at 384-85, 391-92. According to Duff, Lile "punched [] both guys [Rowles and Taylor Powell] twice each" before anyone had time to react, and even after the fracas started Duff did not see "any [punches from Rowles and or Taylor Powell] connect with . . . Lile." 5 VRP at 720, 722.

Lile asserts *State v. York*, 28 Wn. App. 33, 621 P.2d 784 (1980), supports the proposition that ER 608(b) permits his desired method of impeachment. In *York*, the State elicited testimony from a witness on direct examination regarding the witness' favorable law enforcement background. The State then sought to exclude cross-examination into unfavorable aspects of the witness' law enforcement background. *Id.* at 37. The court found "as a matter of fundamental fairness" the defense should have been allowed to cross-examine for "negative characteristics of the one most important witness" when the State sought to introduce the positive characteristics. *Id.* As discussed above, the State did not seek out testimony from Rowles whether he was a fighter. Instead, Rowles offered the testimony and did so primarily during cross-examination. *York* is inapposite.

Again, our task is to assess whether the trial court acted reasonably in denying Lile's ER 608(b)(1) impeachment request. Following Rowles' assertions that he was not a fighter, Lile made an offer of proof. That offer contained allegations from Foster's last protection order petition.[10] According to Judge Garrett, this offer of proof represented only evidence of privacy violations, not violent acts, aside from an accusation that Rowles forcibly took Foster's phone while holding her down on the bed and another accusation that he threatened to beat two of her male coworkers for speaking with her.[11]

---

[10] Judge Garrett had previously reviewed this petition, along with two earlier petitions—one of which Foster later withdrew—before she ruled on Lile's pretrial ER 404(b) motion in limine. Judge Garrett denied Lile's motion in limine after finding "the evidence regarding Mr. Rowles' relationship with women in his life . . . [was not] sufficiently similar to the situation here" to allow for admission. 1 VRP at 12. This made sense. The standard for admission under ER 404(b) for evidence of a common plan or scheme, as requested by Lile in his motion in limine, CP at 192, is that the evidence of past wrongs must demonstrate "'separate but *very similar* crimes.'" *State v. Gresham*, 173 Wn.2d 405, 422, 269 P.3d 207 (2012) (emphasis added) (quoting *State v. Lough*, 125 Wn.2d 847, 855, 889 P.2d 487 (1995)). All aspects of Rowles' past acts, including the sex of the victim, would have been relevant. Conversely, the victim's sex would *not* have been relevant when Judge Garrett considered Lile's ER 608(b)(1) request to impeach Rowles' statement that he was not a fighter. And nothing in the record indicates Judge Garrett considered the victim's sex for purposes of Lile's ER 608(b)(1) impeachment request.

[11] The concurring opinions discuss allegations contained in *three* of Foster's protection order petitions. *See* concurrence (Gordon McCloud, J.) at 8 n.2; concurrence (Madsen, J.) at 6. But Lile offered *only* the *final* protection order petition to the trial court for impeachment purposes. And that petition contained only the allegations discussed above. *See* 4 VRP at 547 (offering exhibit 21 for impeachment purposes); CP at 222 (describing exhibit 21 as the case record of case no. 12-2-02787-7), CP at 87 (Lile's summary of allegations contained in case no. 12-2-02787-7), CP at 150-59 (the petition itself). In assessing whether the trial court abused its discretion in denying his request to impeach Rowles, this court must limit its analysis to the allegations contained in Lile's offer of proof on the issue to the trial court. We cannot look to information contained outside of this record, as the concurrences do, to assess the trial court's performance.

The trial court held, "[T]hat's not laudable conduct, I don't find enough relevance or enough connection between that conduct and the conduct that is asserted or that could be asserted here. . . . I don't see that these protection order allegations . . . accuse him of fighting."[12] 4 VRP at 548-49. As the Court of Appeals noted in affirming the trial court, "While the evidence suggests that Rowles may be abusive and possessive in romantic relationships, nothing in the evidence indicates that Rowles punched his girlfriends or that he ever fought with a third party stranger." *Lile*, 193 Wn. App. at 198-99. The type of hand-to-hand combat at issue in this case is distinguishable from the types of altercations described in Foster's petition. Furthermore, Foster's petition did not contain specific allegations of dishonesty by Rowles.[13] Therefore, it was reasonable for Judge Garrett to find such allegations collateral to the issues presented at trial and irrelevant to Rowles' credibility. *O'Conner*, 155 Wn.2d at 349.[14]

---

[12] Foster did indicate when testifying in her protection order proceeding that she left a location once to avoid getting "in another physical fight" with Rowles. CP at 180. The "fight" she refers to, though, is the previous incident where Rowles held her down and forcibly took her phone. As discussed below, this incident is distinguishable from the mutual combat at issue here.

[13] However, during the protection order proceeding, the court found Rowles not as credible as Foster in the testimony he provided while he attempted to rebut the assertions contained within Foster's petition. CP at 181.

[14] Lile claimed in some of his briefing to this court that his altercation with Rowles stemmed from Rowles taking offense to Lile's advances toward Millman and that these jealous tendencies are supported by the allegations in the petitions for protection orders. This argument was not presented to the trial court. Lile cannot claim an abuse of discretion for denying his request on a theory never presented to the trial court. Nor is it properly before us, as it was never presented to the Court of Appeals. *State v. Duncan*, 185 Wn.2d 430, 435 n.2, 374 P.3d 83 (2016).

The trial court did not abuse its discretion in precluding inquiry into allegations of domestic abuse by Rowles.

## IV. CONCLUSION

Judge Uhrig's continuance ruling was discretionary; and therefore he was qualified to rule on Lile's severance motion. Consistent with *Dennison* and *Espinoza*, we reject the Court of Appeals holding that rulings on agreed motions are not discretionary. We explicitly reverse *Floe* on this issue. Furthermore, Judge Garrett did not abuse her discretion in limiting Lile's cross-examination of Rowles. We affirm the Court of Appeals affirmance of the trial court on both issues.

*State v. Lile*, No. 93035-0

Fairhurst, C.J.

WE CONCUR:

Wiggins, J.

González, J.

Owens, J.

Yu, J.

*State v. Lile (Travis L.)*

No. 93035-0

MADSEN, J. (concurring in result only)—The distinction between discretionary and nondiscretionary rulings is a false dichotomy. Instead, the correct distinction is between matters that affect timing and calendaring but do not affect any of the issues in the case, and those matters that do affect issues in the case, such as availability of witnesses or other factors related to trying the case. An affidavit of prejudice must be made prior to the judge ruling on a matter that indicates how the judge may rule in the case—for that is the type of "discretion" that RCW 4.12.050(1) concerns. In this case, Judge Ira Uhrig's ruling on the unopposed motion for a continuance did not indicate to the parties how he might rule in the case. Therefore, the ruling was not a discretionary ruling within the meaning of RCW 4.12.050(1), and Judge Uhrig improperly denied Lile's affidavit of prejudice. Despite this error, I would find that reversal is not required because the error was harmless. Judge Uhrig did not preside over Lile's trial, and Lile failed to renew his motion to sever in front of Judge Deborra Garrett. Further, I would find that limiting Lile's cross-examination of a key witness was an abuse of discretion. But that too was harmless.

1. The ruling on the continuance was not discretionary within the meaning of RCW 4.12.050(1), thus it was error to deny the affidavit of prejudice

A party has the right to disqualify a trial judge for prejudice without substantiating the claim. RCW 4.12.040, .050. Such a motion must be granted provided that the motion and affidavit are filed and brought to the attention of the judge before he or she has made any order involving discretion. RCW 4.12.050(1). In *State v. Parra*, this court explained that the purpose of this timeliness requirement is to avoid the absurd result of "parties invoking the court's discretion and then waiting to see the disposition of the judge before asserting the right." 122 Wn.2d 590, 599, 859 P.2d 1231 (1993) (citing *State ex. rel. Lefebvre v. Clifford*, 65 Wash. 313, 315, 118 P. 40 (1911)). Thus, the orders involving "discretion" that RCW 4.12.050(1) identifies are those by which the judge has somehow indicated to the parties how he or she may rule in the case.

Whether an order is discretionary under RCW 4.12.050(1) is not about the form of the motion, such as "agreed" or "contested," but about whether there was something substantive related to the case underlying the motion. *See In re Marriage of Tye*, 121 Wn. App. 817, 821, 90 P.3d 1145 (2004) ("it is the substance of the court's action as discretionary or not that is critical"; case scheduling orders are ministerial acts, thus, the judge exercised no discretion). In the present case, I would find that the continuance ruling was not discretionary for purposes of RCW 4.12.050 because the court's ruling

2

indicated no predisposition on the issues in the case.[1] As we explained in *Parra*, "If the parties have resolved such issues among themselves and have not invoked the discretion of the court for such resolution, then the parties will not have been alerted to any possible disposition that a judge may have toward their case." 122 Wn.2d at 600.

Admittedly, granting or denying a motion necessarily involves some type of discretion, but the same is true of the other preliminary matters that the majority distinguishes. Arranging the calendar, setting a matter for hearing or trial, arraigning an accused, and setting an amount for bail are all discretionary acts in the sense that the judge has the general freedom to make those decisions. However, the legislature has dictated that these acts will not be construed as rulings involving discretion *within the meaning* of RCW 4.12.050(1). *See also* LAWS OF 2017, ch. 42, § 2 ("[e]ven though they may involve discretion, the following actions by a judge do not cause the loss of the right

---

[1] The legislature's recent amendment to RCW 4.12.050(1) aligns with this interpretation. *See* LAWS OF 2017, ch. 42, § 2. Effective July 23, 2017, RCW 4.12.050 explicitly includes "ruling on an agreed continuance" in its list of actions that, even though they may involve discretion, do not cause the loss of the right to disqualify the judge. *Id.* (underline omitted). The recent amendments to RCW 4.12.050 make clear the type of acts that do not fall within the ambit of the statute—both now and before the amendment—because the amendment was a *clarification* of those acts. Hr'g on S.S.B. 5277 Before the H. Judiciary Comm., 65th Leg., Reg. Sess. (Wash. Mar. 22, 2017), *audio recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2017031256 (Judge Sean O'Donnell, Superior Court Judges Association President, testifying in support of Substitute Senate Bill 5277; bill meant to "clarify" what acts amount to disqualification). According to the majority, the amendment expanded the list of acts, rather than clarified it. Majority at 10 n.5. But the majority cites no legislative history to support its interpretation. Although testimony before a committee is not given great weight, it is certainly more persuasive than no history at all. The majority fails to explain adequately why we should not follow the legislature's clear expression that a ruling on an agreed continuance is not, and was not at the time of Lile's proceedings, the type of discretionary act that RCW 4.12.050 concerns.

3

to file a notice of disqualification against a judge" (underline omitted)). The same is true

of the agreed continuance in this case. The motion occurred pretrial and was unopposed.

It was a calendaring matter, not a substantive ruling on an issue in the case. By granting

the continuance at issue, Judge Uhrig did not tip his hand to the parties as to how he may

rule on substantive issues in the case. I would hold that Judge Uhrig erred in denying

Lile's affidavit of prejudice.

>    2.   Denying the affidavit of prejudice was not reversible error because a different
>         judge presided over trial and Lile acquiesced in the error he now claims

"The right to peremptory removal of a judge without substantiating a claim of

actual prejudice is not of constitutional dimension, but statutory, flowing from RCW

4.12.040." *State v. Gentry*, 183 Wn.2d 749, 760, 356 P.3d 714 (2015). When a party

timely files an affidavit of prejudice, we deem prejudice established and the judge to

whom the affidavit is directed is divested of authority to proceed. *State v. Cockrell*, 102

Wn.2d 561, 565, 689 P.2d 32 (1984) (quoting *State v. Dixon*, 74 Wn.2d 700, 702, 446

P.2d 329 (1968)). But that does not mean that the improper denial of an affidavit of

prejudice automatically warrants reversal.

In *State ex rel. LaMon v. Town of Westport*, this court found that after the judge

improperly denied the filing of an affidavit of prejudice, the judge's subsequent ruling

was not a reversible error. 73 Wn.2d 255, 261, 438 P.2d 200 (1968), *overruled on other

grounds by Cole v. Webster*, 103 Wn.2d 280, 692 P.2d 799 (1984). This was because the

error was one that the appellant concurred, or at least acquiesced, in. *Id.* The same can

be said about Lile in this case. Lile claims he was prejudiced because he might have

prevailed on his motion for severance if another judge had considered it. But this argument fails. First, Lile got exactly what he originally sought: his trial was held in front of a different judge, Judge Garrett. Second, Lile cannot claim prejudice based on Judge Uhrig's ruling on severance because he acquiesced in that ruling by failing to raise it again before Judge Garrett.[2] Thus, under these circumstances, I would find that Judge Uhrig's ruling on the motion to sever, although made without authority because he improperly denied the affidavit of prejudice, had no effect on the outcome of the trial beyond a reasonable doubt. It was not reversible error.

3. It was an abuse of discretion to prevent Lile from impeaching Christopher Rowles, but the error was harmless

Unlike the majority, I would find that the trial court abused its discretion by not allowing Lile to impeach Rowles, but, again, the error was harmless. Trial courts must ensure a fair trial to both sides. In this case, because the court limited Lile's impeachment of Rowles, the State was able to leave the jury with a false impression of Rowles's peacefulness, while Lile's theory of the case was based on Rowles's aggression. The ruling failed to honor Lile's right to confront the witnesses against him. This error, however, was harmless beyond a reasonable doubt because Rowles was not the only witness to the fight and there was overwhelming evidence that Lile escalated the confrontation by throwing the first punch.

---

[2] As the Court of Appeals pointed out, by failing to renew his motion to sever before the close of trial, Lile waived his right to appeal the issue of severance on the merits. CrR 4.4(a)(2); *State v. Bryant*, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998), *review denied*, 137 Wn.2d 1017, 978 P.2d 1100 (1999).

Article I, section 22 of the Washington Constitution guarantees an accused the

right to "meet the witnesses against him face to face." The Sixth Amendment to the

United States Constitution similarly provides an accused the right to "be confronted with

the witnesses against him." These constitutional rights protect a criminal defendant's

fundamental right to cross-examine witnesses against him. *State v. York*, 28 Wn. App.

33, 36, 621 P.2d 784 (1980) (citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct.

1038, 35 L. Ed. 2d 297 (1973)). Thus, criminal defendants have extra latitude in cross-

examination to show motive or credibility. *Id.* And any fact that goes to the

trustworthiness of a witness may be elicited if it is germane to the issue. *Id.* (citing *State

v. Robideau*, 70 Wn.2d 994, 998, 425 P.2d 880 (1967)). Although important, the right to

cross-examine is not absolute. A court may limit it in consideration of other legitimate

interests, such as relevancy. *Id.* at 37. But "denial or dimunition calls into question the

integrity of the fact-finding process and requires the competing interests be closely

examined." *Id.* (citing *Berger v. California*, 393 U.S. 314, 315, 89 S. Ct. 540, 21 L. Ed.

2d 508 (1969)).

After Rowles repeatedly stated that he had never been in a fight and was "not a

fighter," 4 Verbatim Report of Proceedings at 508, 528, 538, Lile sought to impeach

Rowles with evidence from a protection order petition that a former partner filed against

him. *Id.* at 545. Such impeachment comports with ER 608(b), which states:

> Specific instances of the conduct of a witness, for the purpose of attacking
> or supporting the witness' credibility, other than conviction of crime as
> provided in rule 609, may not be proved by extrinsic evidence. They may,
> however, in the discretion of the court, if probative of truthfulness or

untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Rowles's statements that he was "not a fighter" were directly contradictory to the allegations in the protection order petitions that Lile sought to offer as evidence of Rowles's character for truthfulness or untruthfulness. The issue was also not collateral. Whether Rowles was a peaceful or aggressive person was important to Lile's version of events. Lile's theory of the case was that Rowles purposefully bumped into Lile's shoulder after seeing Lile exchange profanities with Rowles's girlfriend. By limiting Lile's cross-examination of Rowles, the jury was left with an impression that Rowles was a peaceful person who had never been in and would never want to be in a fight. Under ER 608(b), the evidence was probative of Rowles's truthfulness. I would find the trial court abused its discretion.

I also reject any implication that the type of violence necessitating the protection order is meaningfully different from the violence here. The Court of Appeals reasoned that although the evidence suggests that Rowles "may be abusive and possessive in romantic relationships, nothing in the evidence indicates that Rowles punched his girlfriends or that he ever fought with a third party stranger." *State v. Lile*, 193 Wn. App. 179, 198-99, 373 P.3d 247 (2016). I find this distinction troubling. It minimizes the physical aggression alleged in the protection order petition, and it ignores the threats of further physical violence. Further, it does not account for Lile's theory of the case, where

7

Rowles bumped into him in response to seeing him interact with Rowles's girlfriend—a situation where possessiveness in that romantic relationship is highly relevant. As Lile aptly points out, physical aggression in an intimate partnership is not distinct from physical aggression on the street. Such an approach risks minimizing the experiences of survivors and normalizing domestic violence.

Like the Court of Appeals, I would find that it was error to deny Lile's affidavit of prejudice and it was error to limit Lile's cross-examination of Rowles, but these errors were harmless. Therefore, I concur in result only.

No. 93035-0

Madsen, J., concurring in result only

_Madsen, J._

No. 93035-0

GORDON McCLOUD, J. (concurring)—I agree with the majority that Judge

Ira Uhrig's ruling on the agreed motion for a continuance in this case was

discretionary, and that he was therefore qualified to rule on Travis Lee Lile's motion

for severance. Majority at 16. But I disagree with the majority's conclusion

regarding Lile's right to cross-examine Christopher Rowles after Rowles—at the

State's initial prompting—opened himself up to such questioning by making

repeated statements such as "I'm not a fighter" and "I don't think I've ever been in

a fight." 4 Verbatim Report of Proceedings (VRP) (Mar. 19, 2014) at 538, 508.

In a criminal proceeding, a defendant's "right of confrontation and cross-

examination is an essential and fundamental requirement for the kind of fair trial

which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405, 85

S. Ct. 1065, 13 L. Ed. 2d 923 (1965). This vital protection is guaranteed by both our

federal and state constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

To be sure, "trial judges retain wide latitude insofar as the Confrontation

Clause is concerned to impose reasonable limits on such cross-examination based

1

on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). The trial court has this discretion to exclude irrelevant, harassing, or potentially prejudicial evidence to protect the integrity of the fact-finding process. *Id.*; *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

But some things are "always relevant." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (quoting 3A JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 940 (Chadbourn rev. 1970)). This includes specific attacks on a witness's credibility on issues directly relevant to the case at hand. *Id.*

The defendant in this case, Travis Lile, sought to make just this sort of specific attack on Rowles's credibility by cross-examining Rowles on facts that directly contradicted his assertions—in this assault case—that he was "not a fighter." 4 VRP (Mar. 19, 2014) at 538. The trial court barred Lile from doing so, finding that there was not "enough relevance or enough connection between that [domestic violence] conduct and the conduct that is asserted or that could be asserted here" to allow it. *Id.* at 548. The Court of Appeals affirmed, writing that "Rowles's behavior leading to the entry of the protection orders was factually different than the behavior

2

involved with being the aggressor in a fight with a male stranger" because that prior "incident of assault involved a time when Rowles was mad at his then-girlfriend." *State v. Lile*, 193 Wn. App. 179, 202, 198, 373 P.3d 247 (2016), *review granted*, 186 Wn.2d 1016, 380 P.3d 523 (2016).

This violated Lile's constitutional rights under the confrontation clause with respect to his convictions for second degree assault of Amanda Millman and fourth degree assault of Rowles. *See* U.S. CONST. amend. XIV; *State v. Garcia*, 179 Wn.2d 828, 844, 318 P.3d 266 (2014); *State v. Darden*, 145 Wn.2d 612, 620-21, 41 P.3d 1189 (2002). However, because I conclude that this constitutional error was harmless beyond a reasonable doubt, *see Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), I concur in the decision to affirm Lile's conviction.

## ANALYSIS

I.    We Review Constitutional Challenges, Such as Lile's Confrontation Clause Claim Here, De Novo

The majority is correct that we review a trial court's rulings on purely evidentiary matters for abuse of discretion. *City of Spokane v. Neff*, 152 Wn.2d 85, 91, 93 P.3d 158 (2004) (citing *State v. Ellis*, 136 Wn.2d 498, 504, 963 P.2d 843 (1998)). Lile's initial attempt to get the State's witness's prior acts of domestic violence into evidence under ER 404(b)—and the trial court's decision to exclude

it—were evidentiary matters. They are therefore properly reviewed under that abuse of discretion standard.

But when the State subsequently opened the door to impeachment on this issue, and the trial court prohibited it, Lile raised a different issue. He argues that by barring admission of Rowles's prior fighting conduct, the trial court excluded relevant impeachment evidence and limited his ability to cross-examine Rowles in violation of his confrontation right *under the constitution.* Corrected Suppl. Br. of Pet'r at 17-18. Whether this limitation amounted to a violation of Lile's constitutional rights is a question of law, which is therefore subject to de novo review by this court.[1] *State v. McCuistion*, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012) (citing *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006)); *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010) ("We review a claim of a denial of Sixth Amendment rights de novo.").

---

[1] Even under the majority's abuse of discretion approach, Lile would still be entitled to relief on his claim here. This is because "a court 'necessarily abuses its discretion by denying a criminal defendant's constitutional rights.'" *State v. Iniguez*, 167 Wn.2d 273, 280, 217 P.3d 768 (2009) (quoting *State v. Perez*, 137 Wn. App. 97, 105, 151 P.3d 249 (2007)).

II.     The State's Question—and Rowles's Predictable Response to That
        Question—Opened the Door to Impeachment of His Credibility

        *A.     Either Party, or Their Witnesses, Can Open the Door to
        Impeachment*

A party—or that party's witness—who introduces evidence that would

otherwise leave the jury with a "false impression," *United States v. Whitworth*, 856

F.2d 1268, 1285 (9th Cir. 1988), or an "incomplete picture," *State v. Lord*, 117

Wn.2d 829, 894, 822 P.2d 177 (1991), of a material issue opens the door for his or

her opponent to introduce rebuttal evidence, even if such evidence may not

otherwise be admissible as substantive evidence.

Because this doctrine is focused on getting to the truth of the matter, it is not

limited to correcting the false or incomplete characterizations of only one side—or

of only one party. Thus, this court, and the federal courts, have at various times

entertained claims that the defendant, defense counsel, the State, or the State's

witness opened the door to the opponent's rebuttal evidence. *See, e.g., United States

v. Castillo*, 181 F.3d 1129, 1132 (9th Cir. 1999) (defendant's testimony portraying

himself as a "'paragon of virtue,'" which "was volunteered and often not responsive

to questions posed by his lawyer," opened the door to impeachment with otherwise

inadmissible evidence); *In re Det. of West*, 171 Wn.2d 383, 400, 256 P.3d 302 (2011)

(testimony by State's witness regarding defendant's decision to leave treatment

5

opened the door to evidence of defendant's rationale for doing so); *State v. Thomas*, 150 Wn.2d 821, 859, 83 P.3d 970 (2004) (evaluating whether State opened the door to cross-examination on a prior suspect's possible motives to murder the victim); *Lord*, 117 Wn.2d at 892 (statement by defendant's father that defendant was "'a good boy'" opened the door to cross-examination by the State on otherwise inadmissible details regarding defendant's prior crimes); *State v. Gefeller*, 76 Wn.2d 449, 454, 458 P.2d 17 (1969) (prosecutor permitted to inquire of State's witness, a police detective, about lie detector test on redirect "because the matter of a lie detector test was first introduced by defen[se counsel] on cross-examination" of that detective).

On the record of this case, State's witness Rowles first asserted that he was not the fighting kind in response to a question posed by the State. His answer was "neither volunteered nor unresponsive." *Gefeller*, 76 Wn.2d at 455. And it was entirely predictable. The prosecutor asked Rowles, "Well, how come you didn't like defend yourself?" 4 VRP (Mar. 19, 2014) at 508. Rowles's response contrasted starkly with Lile's theory that Lile assaulted Rowles in self-defense because he felt threatened by Rowles's aggressive behavior:

> Everything kind of caught me by surprise to be honest with you. I don't get into too many fights. I don't think I've ever been in a fight. So it kind of caught me by surprise and I was knocked back a little bit against a car.

6

*Id.* Once the State elicited this explicit claim, it opened the door, as the Court of Appeals recognized, to impeachment evidence "that Rowles is a fighter or was the initial aggressor in the fight—evidence directly contradicting Rowles's testimony and challenging his credibility." *Lile*, 193 Wn. App. at 201.

### B. Rowles's Prior Assault of His Ex-Girlfriend Constituted "Fighting"

This is precisely the kind of evidence that Lile attempted to present. Specifically, defense counsel sought to ask Rowles, "'Isn't it true you have a harassment order for pushing somebody down on the bed, getting control over them, wouldn't you call this a fight?'" 4 VRP (Mar. 19, 2014) at 545. The question was based on allegations, in 2011 and 2012, that Rowles was violent and controlling toward his girlfriends at that time. On one occasion, a girlfriend alleged that Rowles "kept shoving [her] back on the bed" to prevent her from leaving and "grabbed [her] wrist and twisted it backwards," causing her to "[fall] to the floor in pain, with [the couple's infant son] still in [her] arms." Clerk's Papers (CP) at 123. A few months later, that girlfriend returned to court and stated that Rowles got angry when someone tried to text her, grabbed her arms and wrists, got on top of her, and pinned her to the bed until she fell off the bed, injuring her neck. CP at 153. She also noted that Rowles threatened to "beat the asses of the two guys at [her] work because [she]

talked to them." CP at 154. As a result of these incidents, the girlfriend petitioned

for civil domestic violence protection orders in Whatcom County Superior Court.

CP at 120-30, 150-59.

The trial court found that while this conduct was "not laudable," it was also

not "sufficiently similar" as to be appropriate to impeach Rowles's claims.[2] 4 VRP

(Mar. 19, 2014) at 548-49. The Court of Appeals agreed that while allegations of

prior "fighting" by Rowles would be admissible to challenge his credibility after he

claimed that he hadn't "ever been in a fight," *id.* at 508, his ex-girlfriend's allegations

did not meet this standard. *Lile*, 193 Wn. App. at 201. In other words, both courts

found that pinning his girlfriend down by the arms, grabbing and twisting her wrists,

and physically confining her to a room was not "fighting" in the same way as getting

into a fistfight with another man.

---

[2] The majority claims that all but one of these incidents are "outside of this record," but the record is clear that defense counsel raised not one but three of Rowles's prior acts of domestic violence with the court. Majority at 23 n.11; 4 VRP (Mar. 19, 2014) at 543 (referencing "three events" previously presented to the court during defense's ER 404(b) motion, CP at 85-194). The trial court appears to have based its ruling that the domestic violence was not relevant—and therefore not admissible as impeachment evidence—on the October 14, 2012 incident in which Rowles allegedly grabbed his girlfriend's arms and wrists, pinned her to the bed to wrestle her phone away from her, and threatened to "beat the asses" of her male coworkers. *Id.* at 548; *see also* CP at 150-59 (Pet. for Order for Prot. of Nicole Foster (Oct. 22, 2012)). But regardless of whether one or three incidents formed the basis of the court's decision, the fact remains that defense counsel raised and argued all of them. In addition, Rowles's physical assault of his then-girlfriend—for which a domestic violence order for protection was granted, CP at 167-71—constituted "fighting" just like his alleged mutual combat with Lile.

8

Until the past several decades, our laws—and our courts—did not consistently recognize physical violence against women as serious *criminal* conduct. Indeed, to gain this recognition, advocates for legal reform had to fight against a long standing view in this country that assault against women was a private, family matter rooted in a husband's historical "duty to control and chastise" his wife, and not a matter of concern for the State. Marvin Timothy Gray, *Historical Legal Context in Domestic Violence Custody Cases, in* DOMESTIC VIOLENCE, ABUSE, AND CHILD CUSTODY: LEGAL STRATEGIES AND POLICY ISSUES 2-6 (Mo Therese Hannah & Barry Goldstein eds., 2010). Restrictions on police conduct, such as the rule—in force until the late 1970s in all but 14 states—that police had to witness a misdemeanor to make a warrantless arrest had the practical effect of yielding far more arrests for assaults between strangers in public than for assaults against women in the privacy of the home. *See* EVE S. BUZAWA & CARL. G. BUZAWA, DOMESTIC VIOLENCE: THE CRIMINAL JUSTICE RESPONSE 122 (James A. Inciardi ed., 2d ed. 1996). Such incidents were also frequently routed away from the criminal justice system and into specialized family courts, which were designed to help participants "work out problems within the family structure . . . rather than address crimes committed," further reinforcing the message that assault against women isn't truly a crime. *Id.* at 33.

Declining to recognize what transpired between Rowles and his ex-girlfriend as being equal in nature to the physical altercation that allegedly transpired between Lile and Rowles rings of our earlier misunderstandings of the dynamics of violence against women. Because I believe that both incidents equally constituted "fighting," and the domestic violence allegations thus bore directly on Rowles's credibility in light of his testimony at trial, I would hold that the trial court erred in preventing Lile from impeaching Rowles's testimony on this point.

III.     Barring Lile from Impeaching Rowles Based on Rowles's Prior Fighting Violated Lile's Rights under the Confrontation Clause

We apply a three-part test to determine whether a trial court's ruling limiting defense cross-examination violates a defendant's constitutional confrontation clause rights. *Darden*, 145 Wn.2d at 621-23 (citing *Hudlow*, 99 Wn.2d at 15). To establish such a violation, (1) the defendant's evidence must be relevant, (2) the State must show that the "evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial," and (3) the State's interest in excluding the prejudicial evidence must outweigh the defendant's need for the information sought to be admitted. *Id.* at 622.

In Lile's case, all of the argument at the trial court seems to have been over the first prong—whether Rowles's past altercations were relevant to his claims at trial that he was "not a fighter." 4 VRP (Mar. 19, 2014) at 538. For the reasons

10

articulated above, I believe that it was, and that the State did not—and could not—show that admitting this evidence would be prejudicial enough to "disrupt the fairness of the fact-finding process at trial."[3] *Darden*, 145 Wn.2d at 622. On the contrary, the information *was* relevant in part because it served to enhance the fact-finding process—by helping to provide "a complete illumination of a case" instead of "'a partial or speculative presentation of the facts.'" *Doyle v. Ohio*, 426 U.S. 610, 629 n.8, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976) (Stevens, J., dissenting) (quoting *United States v. Nixon*, 418 U.S. 683, 709, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974)).

Thus, the trial court erroneously excluded this evidence and, in so doing, infringed on Lile's constitutional rights.

IV.  The Trial Court's Constitutional Error Was Harmless beyond a Reasonable Doubt

Violations of a defendant's rights under the confrontation clause are subject to *Chapman* harmless error review. *Van Arsdall*, 475 U.S. at 684. Under *Chapman*, the State bears the burden of proving that constitutional error is harmless beyond a reasonable doubt, 386 U.S. at 24, which may be met "if there is overwhelming

---

[3] Indeed, the State has not articulated *any* interest in excluding Rowles's prior domestic violence conduct—much less a "compelling" one. *Hudlow*, 99 Wn.2d at 15. Instead, before this court, it continues to argue that Rowles's prior conduct was not relevant. Resp't's Suppl. Br. at 18-19 ("The judge did not abuse her discretion because Rowles' harassment of his ex-girlfriend was not relevant to rebut Rowles' testimony he wasn't a fighter in an incident involving total strangers.").

11

evidence of the defendant's guilt that is not tainted by the error." *State v. Barry*, 183 Wn.2d 297, 303, 352 P.3d 161 (2015) (citing *State v. Nist*, 77 Wn.2d 227, 233-34, 461 P.2d 322 (1969)).

This inquiry looks at "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684. Looking at the record as a whole, the evidence here meets that standard.

Lile argued self-defense for the assault of Rowles. To make this claim, Lile first had to produce "some evidence" that he acted " in circumstances amounting to self-defense, i.e., the statutory elements of reasonable apprehension of great bodily harm and imminent danger." *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999) (citing *State v. Janes*, 121 Wn.2d 220, 237, 850 P.2d 495 (1993)). After that, the State bore the burden of proving, beyond a reasonable doubt, that Lile did *not* act in self-defense. *State v. Walden,* 131 Wn.2d 469, 473, 932 P.2d 1237 (1997).

Lile testified that just before he hit Rowles, someone struck him on the right shoulder from behind. 6 VRP (Mar. 25, 2014) at 867-68. He also testified that as he turned around, "two males"—Rowles and his friend—were "aggressively

12

walking towards him" and that "the tone of their voice was also aggressive." *Id.* at 868-69. Lile stated that he feared the men might hurt him and that he was "very frightened." *Id.* He acknowledged that he threw the first punch. *Id.*

On the essential facts of this encounter, Lile and Rowles gave similar testimony. Rowles also testified that Lile was walking backward and that the two men "had bumped shoulders" as Lile turned around. 4 VRP (Mar. 19, 2014) at 505. And Rowles testified that the two men exchanged words. *Id.* at 527.

The only material discrepancy is whether Rowles stepped toward Lile immediately before Lile struck him. But there was ample other testimony presented on this point aside from Rowles's and Lile's conflicting accounts—testimony from Officer Jeremy Woodward, 2 VRP (Mar. 17, 2014) at 101 ("At the time of being punched the first male that I saw looked like he was kind of backing up."); Amanda Millman, 3 VRP (Mar. 18, 2014) at 286 (After the collision between Rowles and Lile, "the Defendant just turned and just started swinging."); Sean Duff, 5 VRP (Mar. 24, 2014) at 672 ("[A]s these two were walking toward him Travis was kind of backing up a little bit in that direction and they were coming closer" before Lile "took a swing with his right hand and hit the person that was right here."); Cameron Moore, *id.* at 777 (After the collision, Lile "confronted the two people" and then "both of them got in his face."); and Alan Owens, CP at 389 ("I mean they did walk

up to him, you know, they did kind of like get into his personal space" (Video Dep. of Owens, Feb. 21, 2014)).

The overwhelming untainted evidence therefore supports the jury's rejection of Lile's self-defense claim. For this reason, I concur in the decision to affirm.

CONCLUSION

The trial court erred in excluding impeachment evidence that directly impeached Rowles's credibility on a significant element of the defense. This violated Lile's constitutional rights under the confrontation clause. The error, however, was harmless beyond a reasonable doubt. I therefore concur.